IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSHUA GLASSCOCK, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| SIG SAUER, INC., | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

# COMPLAINT

This is a proposed class action on behalf of all persons who purchased a Sig Sauer model P320 pistol in the State of Missouri from September 1, 2017, through the present. In support of his Complaint, Plaintiff respectfully submits the following allegations:

1. Sig Sauer designs, manufactures, and markets a striker-fired pistol known as the P320.

2. The P320 is one of the most popular handguns in the United States, and is the selected service model for several law enforcement agencies and the United States Army.

3. But the P320 lacks safety features of comparable pistols sold by Sig Sauer's competitors, and it inadvertently discharges at a higher rate than comparable pistols.

4. Sig Sauer conceals and omits this material information from consumers about the enhanced risks associated with the P320.

5. Plaintiff brings this action under the Missouri Merchandising Practices Act (MMPA) on behalf of himself and other consumers who have been harmed by Sig Sauer's conduct.

## PARTIES

6. Joshua Glasscock is a resident of Polk County, Missouri. He is a longtime law enforcement officer. He purchased his Sig Sauer P320 in April 2020 in Polk County, Missouri. He paid approximately $400 for the pistol. The pistol's serial number is 58A146892.

7. Glasscock purchased the P320 for personal use and still owns it.

8. Glasscock would not have purchased the P320, or would have paid substantially less for it, had the defective nature of the P320 as outlined herein been disclosed to him and/or publicly confirmed by Sig Sauer prior to the time of purchase.

9. Sig Sauer, Inc. is a Delaware corporation with a principal place of business at 72 Pease Boulevard; Newington, New Hampshire 03801. Sig Sauer may be served in Missouri through its registered agent: Cogency Global Inc.; 222 East Dunklin, Suite 102; Jefferson City, Missouri 65101.

10. Sig Sauer designs, manufactures, and markets firearms, including the P320.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action under 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, and at least one member of the proposed class is a citizen of a state different than Defendant.

12. Venue is proper in this District and Division under 28 U.S.C. § 1391, as well as W.D. Mo. Local Rule 3.2.

## FACTUAL ALLEGATIONS

13. Sig Sauer designs, manufactures, and markets the P320 striker-fired pistol.

14. The P320 is one of the most popular handguns in the United States.

15. The P320 is a striker-fired pistol, meaning "there is no hammer present. When the slide is racked back and released forward, the firing pin remains back and under spring tension. The trigger releases this tension and allows the pin to push forward resulting in firing the round in the chamber."[1]

16. "Because there is no hammer to cock or release, <u>the trigger pull of most striker-fired pistols are incredibly easy to pull and have low pull-weights</u>." *Id.*

17. Despite having a trigger that is "easy to pull," Sig Sauer's P320 does not contain a trigger toggle—a small tab in the face of the trigger that has to be fully depressed for the trigger to move rearward and fire the pistol. A photo of the P320 trigger is below:



18. Sig Sauer's design deviates from the industry standard. Other manufacturers of striker-fired pistols include trigger toggles as an added safety feature. For example, the Glock striker-fired pistol is shown below:

---

[1] https://www.triangleshootingacademy.com/ccms/index.cfm/news-articles/resource-center/hammer-fired-vs-striker-fired/

3



19. In addition to the Glock, other popular versions of striker-fired pistols come with external safety features such as a trigger safety toggle and/or a manual safety:

| Striker-Fired Pistol Model | External Safety Feature |
|---|---|
| CZ P10C | Trigger toggle |
| Heckler & Koch VP9 | Trigger toggle |
| Smith & Wesson M&P | Manual safety |
| Walther PPQ | Trigger toggle |
| **Sig Sauer P320** | **NONE** |

20. On the Glock and many other striker-fired pistols, the only external safety feature is the trigger toggle; they do not contain a manual safety tab.

21. Thus, Sig Sauer's design decision to eliminate the trigger toggle means that the P320 lacks any external safety features (i.e., no trigger toggle and no manual safety).

22. Sig Sauer's Product Catalog touts that all branches of the U.S. Military have adopted firearms based on the P320 as their official service weapon:

> After one of the most rigorous and highly competitive selection processes in the history of small arms, the SIG SAUER P320 based M17 and M18 were awarded the Modular Handgun System (MHS) contract by the U.S. Army. The M17 and M18 have now been adopted by all branches of the U.S. Military.

2021 SIG SAUER Product Catalog at p. 5.[2]

---

[2] Available at https://cloud.3dissue.com/184198/184677/215529/2021Catalog/offline/download.pdf

4

23. The Catalog continues: "[T]he state-of-the-art SIG SAUER P320 has quickly become one of the most sought after firearms on the market today. Chosen by all branches of the U.S. military, as well as law enforcement agencies across the country and around the world, the P320 redefines the modern handgun." *Id.* at p. 15.

24. In its marketing about the military's adoption of the P320, though, Sig Sauer never discloses that the military version of the pistol contains an ambidextrous manual safety. The military version of the P320 contained "safety and slide-catch levers on both sides." *The Army Has Finally Picked Its Next Service Pistol* (Jan. 20, 2017).[3] Sig Sauer refers to these as an ambidextrous manual safety. *See* 2021 Product Catalog at p. 17 (listing features of the M17 and M18 versions of the P320).

25. Thus, unlike its primary competitors and even its M17 and M18 counterparts, the civilian version of the P320 lacks <u>any</u> external safety features: no trigger toggle and no manual safety.

26. The absence of these external safety features causes and/or contributes to the P320 being more susceptible than its counterparts to inadvertent discharges, i.e., discharges where the there is no trigger pull.[4]

27. Sig Sauer does not warn, advise, or tell consumers about the increased likelihood of the P320 inadvertently discharging due to the absence of these external safety features.

28. For example, in the P320 Operator's Manual, Sig Sauer tells consumers that "[b]y understanding the dangers inherent in the use of any firearm, <u>and by taking the precautions</u>

---

[3] Available at https://taskandpurpose.com/gear-tech/army-finally-picked-next-service-pistol/

[4] In the weapons industry, an inadvertent or unintended discharge is a discharge in which the weapon fires without a trigger pull. *See, e.g., O'Neal v. Remington Arms Co., LLC*, 817 F.3d 1055, 1060 (8th Cir. 2015) (referring to "inadvertent discharge" of weapon "without the trigger being pulled").

<u>described in this manual, you can experience a higher level of safety in the use of your firearm</u>." Operator's Manual at p. 2.

29. Yet the Operator's Manual <u>never</u> discloses to consumers that the P320 (1) lacks any external safety feature that are available on other firearms, and (2) the P320 has a higher risk of inadvertent discharges due to the absence of an external safety feature. Thus, the Operator's Manual never explains additional precautions that consumers can take, thus allowing them to "experience a higher level of safety . . ." *Id.*

30. The Operator's Manual also advises consumers that the P320 "comes equipped with effective, well-designed safety features" and that "[m]any safeties are incorporated into your firearm." *Id.* at p. 2. But it never warns consumers that the P320 <u>lacks</u> external safety features available on other firearms. Without this corresponding warning about what the P320 lacks, Sig Sauer's safety promises are meaningless.

31. Plaintiff received a copy of the Operator's Manual when he purchased his P320 pistol.

32. Sig Sauer also never warns consumers that they will need to engage in enhanced and heightened safety procedures because of the P320's lack of any external safety procedures.

33. Simply put, Sig Sauer is silent about the P320's absence of external safety features, and omits any instructions about how to properly and safely use such a firearm.

34. Sig Sauer does state that the P320 "is offered with an optional ambidextrous manual safety." *Id.* at p. 20 (section 3.2). But Sig Sauer omits any information about the enhanced safety steps a consumer should use if the P320 does not have a manual safety, nor does it provide any warning about the absence of a manual safety. Rather, it merely advises about the option of a manual safety without discussing any of the consequences of carrying a firearm without one.

6

*Sig Sauer's Harm to Consumers*

35. The P320's absence of any external safety has dangerous consequences for its users.

36. The P320's absence of any external safety features causes and/or contributes to the firearm inadvertently discharging under normal handling circumstances and without the trigger being pulled.

37. These inadvertent discharge incidents are not theoretical. Rather, since 2018, over twenty lawsuits have been filed against Sig Sauer alleging the P320 discharged without the trigger being pulled:

| Case Name | Jurisdiction | Case No. | Date Filed |
|---|---|---|---|
| *Herman v. Sig Sauer* | W.D. Okla. | 21-CV-1038 | October 25, 2021 |
| *Frankenberry v. Sig Sauer* | D. S.C. | 19-CV-2990 | October 22, 2019 |
| *Hoefs v. Sig Sauer* | W.D. Wash. | 20-CV-5173 | February 26, 2020 |
| *Schneider v. Sig Sauer* | D. N.H. | 20-CV-1190 | December 18, 2020 |
| *Green-Berrios v. Sig Sauer* | D. P.R. | 22-CV-1002 | January 4, 2022 |
| *Vadnais v. Sig Sauer* | D. Conn. | 18-CV-605 | April 9, 2018 |
| *Powers v. Sig Sauer* | M.D. Fla. | 20-CV-2026 | August 28, 2020 |
| *Haynes v. Sig Sauer* | N.D. Ga. | 20-CV-4218 | October 13, 2020 |
| *Lang v. Sig Sauer* | N.D. Ga. | 21-CV-4196 | October 11, 2021 |
| *Williams v. Sig Sauer* | E.D. Ky. | 20-CV-78 | May 22, 2020 |
| *Davis v. Sig Sauer* | E.D. Ky. | 22-CV-10 | February 1, 2022 |
| *Mayes v. Sig Sauer* | W.D. Ky. | 19-CV-146 | October 16, 2019 |
| *Ahern v. Sig Sauer* | D. Mass. | 21-CV-11007 | June 16, 2021 |
| *Collette v. Sig Sauer* | D. Mass. | 21-CV-11392 | August 25, 2021 |
| *Campbell v. Sig Sauer* | W.D. Mo. | 21-CV-5047 | May 19, 2021 |
| *Guay v. Sig Sauer* | D. N.H. | 20-CV-736 | July 2, 2020 |
| *Colwell v. Sig Sauer* | N.D.N.Y. | 21-CV-1200 | November 2, 2021 |
| *Slatowski v. Sig Sauer* | E.D. Pa. | 21-CV-729 | February 17, 2021 |
| *Hilton v. Sig Sauer* | E.D. Tex. | 21-CV-441 | August 16, 2021 |
| *Watson v. Sig Sauer* | N.D. Tex. | 21-CV-106 | January 29, 2021 |
| *Vadnais v. Sig Sauer* | E.D. Va. | 18-CV-540 | May 4, 2018 |
| *Jinn v. Sig Sauer* | S.D.N.Y. | 20-CV-1122 | February 10, 2020 |

38. These alleged inadvertent discharges occurred under lawful, ordinary and foreseeable handling circumstances.

7

39. Other manufacturers of striker-fired pistols have not faced the same volume of litigation related to inadvertent discharges in their firearms. In this respect, Sig Sauer is an island within the industry.

*Sig Sauer Knew or Should Have Known About the P320's Dangerous Conditions*

**Sig Sauer's Testing Protocols**

40. Sig Sauer has touted the M17 and M18—the military counterpart of the P320—as "among the most tested handguns in history" that have "been proven to be unmatched in both accuracy and reliability."[5]

41. On its own website, Sig Sauer proclaims that the P320 is "**TESTED AND ABUSED**." Under this banner, the company further states:

> With its unmatched modularity, unprecedented accuracy, and uncompromising reliability, the state-of-the-art SIG SAUER P320 has quickly become one of the most sought after firearms on the market today. Chosen by all branches of the U.S. military, as well as law enforcement agencies across the country and around the world, the P320 redefines the modern handgun.[6]

42. In its 2021 Product Catalog, Sig Sauer states that the P320 "surpassed some of the most rugged and grueling testing protocols in the history of firearms."[7]

43. The Catalog also stated that the P320 was "[t]ested to ensure extreme reliability and accuracy." *Id.* at p. 45.

44. Additionally, Sig Sauer should have tested the P320 consistent with the standards promulgated by the Sporting Arms and Ammunition Manufacturers' Institute, Inc. (SAAMI).

---

[5] *Sig Sauer's P320-M18 Is the U.S. Military's Gun of Choice. Soon You Can Find Out Why.* (Jan. 13, 2020), available at https://nationalinterest.org/blog/buzz/sig-sauers-p320-m18-us-militarys-gun-choice-soon-you-can-find-out-why-113156

[6] https://www.sigsauer.com/firearms/pistols/p320.html

[7] https://cloud.3dissue.com/184198/184677/215529/2021Catalog/index.html at p. 17.

8

45. SAAMI is "an association of the nation's leading manufacturers of firearms, ammunition and components. SAAMI was founded in 1926 at the request of the federal government and tasked with:

- Creating and publishing industry standards for safety, interchangeability, reliability and quality.
- Coordinating technical data.
- Promoting safe and responsible firearms use.

About SAAMI, available at https://saami.org/about-saami/.

46. SAAMI's purpose is to "create and promulgate technical, performance and safety standards for firearms, ammunition, and components . . ." *Id.*

47. Sig Sauer is a member of SAAMI.

48. SAAMI issued a series of test protocols called "Voluntary Performance Standards Criteria for Evaluation of New Firearms Designs Under Conditions of Abusive Mishandling for the Use of Commercial Manufacturers" (SAAMI Standard).[8]

49. The SAAMI Standard applies to pistols like the Sig Sauer P320.

50. The SAAMI Standard contains provisions regarding drop tests, and other tests to evaluate a gun's safety under abusive conditions.

51. Upon information and belief, Sig Sauer would have employed the SAAMI in the SAAMI Standard against the P320 before marketing it.

52. Upon information and belief, based on those tests, Sig Sauer knew or should have known about the dangers of the P320 described herein.

---

[8] Also known as SAAMI National Standard Z299.5-2016, available at https://saami.org/wp-content/uploads/2019/01/SAAMI-Z299.5-Abusive-Mishandling-Approved-3-14-2016.pdf

9

## Sig Sauer's Earlier "Voluntary Upgrade"

53. Sig Sauer's earlier conduct also demonstrates knowledge of the P320's propensity for inadvertent discharges.

54. Indeed, in 2017, Sig Sauer initiated a "Voluntary Upgrade Program" in response to complaints about inadvertent discharges when the P320 was dropped and discharges "out of battery," meaning the gun's slide was not aligned with the body of the firearm.

55. As part of its VUP, Sig Sauer "updated" the P320's slide and its trigger, but it did not add a safety feature to the trigger.

56. Rather, Sig Sauer merely updated the trigger to a "reduced mass trigger" with a "thinner profile."

57. Thus, Sig Sauer's VUP did not enhance the firearm's external safety features because it neither added a trigger toggle nor a manual safety. In effect, the VUP did nothing to change the external safety features of the P320.

58. Nonetheless, even without these external safety features, Sig Sauer's "Questions and Answers" associated with the VUP continued to represent to consumers that the firearms were safe and that the VUP would have minimal impact on the firearm:

> **Is my P320 safe in its current configuration?**
>
> Yes. The P320 meets and exceeds all US safety standards. . . . .
>
> *****
>
> **What if I don't want to upgrade the trigger assembly on my P320?**
>
> This is a voluntary service, as the P320 meets and exceeds all ANSI/SAAMI, DOJ, California, Massachusetts, and safety

standards. Sig Sauer welcomes all of its P320 owners to take advantage of this program.

*****

**How will I know if the P320 has the upgraded trigger system without disassembling?**

The most obvious external difference is the lightweight trigger. It has a thinner profile than the standard curved trigger. The other changes are minimal and would likely not be noticed.

Sig Sauer P320 Voluntary Upgrade Program.[9]

59. Thus, Sig Sauer's VUP demonstrates Sig Sauer's knowledge of the alleged inadvertent discharge defect in August 2017. But the VUP did not remedy the defect and P320 firearms sold since the VUP continue to have the design defect articulated herein.

60. The VUP's ineffectiveness is underscored by the fact that most of the litigation faced by Sig Sauer was filed *after* the 2017 VUP, meaning the VUP did not effectively remedy the inherent dangers associated with the P320. See ¶ 37, *supra*.

*Sig Sauer's Omissions*

61. In summation, Sig Sauer omits, conceals, and/or fails to disclose several material facts about the P320 firearm:

    a. It has a heightened risk of inadvertent discharges due to the absence of external safety features, even under normal and/or foreseeable handling circumstances;

    b. It requires a heightened degree of care than comparable firearms due to its lack of external safety features; and

---

[9] Available at https://www.sigsauer.com/p320-voluntary-upgrade-program.

c.  It lacks safety features available on other comparable firearms in the marketplace.

62. Furthermore, Sig Sauer touts that the military adopted the P320 as its service firearm, but omits that the military version of the firearm (the M17 and M18) contains a manual safety that is not on the consumer version of the pistol.

63. Plaintiff was not aware of these omissions at the time of his purchase.

64. Had Plaintiff known of these omissions, he would not have purchased the P320 firearm, or he would have paid substantially less for it.

## CLASS ALLEGATIONS

65. Plaintiff, on behalf of himself and the proposed Class, re-alleges the foregoing paragraphs as if fully set forth herein.

66. Plaintiff seeks to represent the following proposed Class:

**All persons who purchased a Sig Sauer model P320 pistol without an external safety in the state of Missouri from September 1, 2017, through the present.**

67. Excluded from the proposed Class is Sig Sauer, including any affiliate, parent, or subsidiary of Sig Sauer; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; and members of the judge's staff.

68. Also excluded from the proposed Class are any individuals who have suffered personal injury and/or bodily harm due to the inadvertent discharge defect described herein.

69. This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of Federal Rule of Civil Procedure Rule 23.

70. **Numerosity**. Sig Sauer sold thousands of P320 firearms, including a substantial number in Missouri. Members of the proposed Class likely number in the hundreds or thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

71. **Predominance**. Common questions of law and fact exist as to all members of the proposed Class and predominate over questions affecting only individual class members. These common questions include whether:

   a. the P320 pistols contain a defective design that leads to inadvertent discharges;

   b. the P320's absence of external safety features (i.e., trigger toggle and/or manual safety) cause or contribute to inadvertent discharges;

   c. Sig Sauer knew or should have known about the inadvertent discharge defect and, if so, when Sig Sauer discovered it;

   d. Sig Sauer disclosed the existence of the inadvertent discharge defect to consumers;

   e. Sig Sauer omitted material information concerning the inadvertent discharge defect and the P320's absence of safety features;

   f. Sig Sauer concealed the existence of the inadvertent discharge defect;

   g. Sig Sauer's conduct harmed Plaintiff and the proposed Class;

   h. Plaintiff and the proposed Class are entitled to damages; and

   i. Plaintiff and the proposed Class satisfy the requirements of Federal Rule of Civil Procedure 23.

72. **Typicality**. Plaintiff's claims are typical of the claims of the proposed Class because he purchased the same firearm containing the same alleged defect in Missouri within the class period; this similarity gives rise to substantially the same claims as the proposed Class.

73. **Adequacy**. Plaintiff is an adequate representative of the proposed Class because his interests do not conflict with the interests of the members of the Class that he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously by monitoring and directing the actions of class counsel. The interests of members of the class will be fairly and adequately protected by Plaintiff and his counsel.

74. **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Sig Sauer economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the P320 pistol's alleged defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

75. In the alternative, the proposed Class may be certified because:

   a. the prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent or varying adjudication with respect to individual

Class members which would establish incompatible standards of conduct for Sig Sauer;

b.  the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.  Sig Sauer has acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed Class as a whole.

## LEGAL CLAIM

**Violation of the Missouri Merchandising Practices Act**
**Mo. Rev. Stat. §§ 407.010** *et seq.* **("the MMPA")**
**(Plaintiff Individually and on behalf of the proposed Class)**

76. Plaintiff, on behalf of himself and the proposed Class, re-alleges the foregoing paragraphs as if fully set forth herein.

77. The Missouri Merchandising Practices Act ("the MMPA") provides that "[t]he act, use or employment by any person of any deception . . . [or] unfair practice, or the concealment . . . of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020.1.

78. The enabling regulations for the MMPA define an "unfair practice" as conduct that (1) offends public policy; (2) is unethical, oppressive, and unscrupulous; (3) causes a risk of substantial injury to consumers; (4) was not in good faith; (5) is unconscionable; or (6) is unlawful. *See* Mo. Code Regs. Ann. tit. 15, § 60-8.

79. The regulations elaborate that a concealment in violation of the MMPA "is any method, act, use or practice which operates to hide or keep material facts from consumers." *Id.* at § 60-9.110(2). Similarly, an actionable "omission" is "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her." *Id.* at (3).

80. Under the MMPA, the term "merchandise" is broadly defined to include "any objects . . . or services." Mo. Rev. Stat. § 407.020.4. The P320 firearms are "merchandise" within the scope of the MMPA.

81. The MMPA authorizes private causes of action, and class actions. Mo. Rev. Stat. §§ 407.025.1; 407.025.2. Plaintiff and members of the proposed Class are individuals entitled to bring suit and recover under the MMPA.

82. When Sig Sauer designed, manufactured, and marketed the P320 firearms it was involved in the conduct of trade and commerce under the MMPA.

83. At the time that Sig Sauer designed, manufactured, and marketed the P320 firearms it knew or should have known that the defective pistols pose serious safety risks to consumers like Plaintiff and members of the proposed Class.

84. Nonetheless, Sig Sauer concealed its knowledge of the alleged inadvertent discharge defect from consumers, including Plaintiff and members of the proposed Class.

85. Sig Sauer also omitted and concealed other material information from Plaintiff and members of the proposed Class, including:

    a. The P320 has a heightened risk of inadvertent discharges due to the absence of external safety features, even under normal and/or foreseeable handling circumstances;

b. The P320 requires a heightened degree of care than comparable firearms due to its lack of external safety features; and

c. The P320 lacks safety features available on other comparable firearms in the marketplace.

86. Furthermore, Sig Sauer touts that the military adopted the P320 as its service firearm—thereby giving the pistol credibility among gun enthusiasts—but omits that the military version of the firearm (the M17 and M18) contains a manual safety that is not on the consumer version of the pistol.

87. Sig Sauer intentionally concealed and/or omitted the unreasonable safety risks associated with the P320 firearms that were material facts to consumers like Plaintiff and members of the proposed Class.

88. Sig Sauer's omissions and concealments of material fact constitute unfair and/or deceptive practices in violation of the MMPA.

89. Had Sig Sauer disclosed the true quality and defective nature of the P320 firearm, Plaintiff and Class members would not have purchased them or would have paid substantially less for them.

90. To this day, Sig Sauer continues to violate the MMPA by concealing the defective nature of the P320 firearm by failing to issue a recall, by failing to notify customers of the serious safety issues posed by the P320's inadvertent discharge defect, and by failing to offer cost-free repair or replacement of the defective P320 firearms.

91. As a direct and proximate result of Sig Sauer's unfair acts or practices alleged herein, Plaintiff and the Class members were damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment awarding the following relief:

a. An order certifying the proposed Class and appointing Plaintiff and his counsel to represent the Class;

b. An order awarding Plaintiff and the Class members their actual damages, and/or any other form of monetary relief provided by and pursuant law;

c. An order requiring Sig Sauer to adequately disclose and repair the inadvertent discharge defect;

d. An order awarding Plaintiff and the Class pre-judgment and post-judgment interest as allowed under the law; and

e. An order awarding Plaintiff and the Class reasonable attorneys' fees and costs of suit, including expert witness fees.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

18

Case 6:22-cv-03095-MDH   Document 1   Filed 04/18/22   Page 18 of 19

DATED: April 18, 2022  Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

_/s/ Matthew L. Dameron_
Matthew L. Dameron  MO Bar No. 52093
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
T: (816) 945-7110
F: (816) 945-7118
E: matt@williamsdirks.com

-and-

Todd C. Werts  MO Bar No. 53204
**LEAR WERTS LLP**
103 Ripley Street
Columbia, Missouri 65201
T: (573) 875-1991
F: (573) 279-0024
E: werts@learwerts.com

*Counsel for Plaintiff and the Proposed Class*