# Exhibit 28

| | |
|---|---|
| JOSHUA GLASSCOCK, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SIG SAUER, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) CASE NO.: 6:22-cv-03095-DPR <br> ) <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF CARLA A. PEAK REGARDING PROPOSED
CLASS CERTIFICATION NOTICE PLAN**

I, Carla A. Peak declare as follows:

1. My name is Carla A. Peak. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2. I am a Vice President of Legal Notification Services for Verita Global, LLC ("Verita") f/k/a KCC Class Action Services, LLC or KCC, a firm that specializes in comprehensive class action services, including legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, claims processing, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements. With more than 30 years of industry experience, Verita has developed efficient, secure, and cost-effective methods to effectively manage the voluminous data and mailings associated with the noticing, claims processing and disbursement requirements of these matters to ensure the orderly and fair treatment of class members and all parties in interest.

3. I am a nationally recognized expert in the field of legal notification, and I have served as an expert in countless federal and state cases involving class action notice plans.

4. Plaintiff's Counsel has asked Verita to design and, if approved, implement the Class Certification Notice Plan for this matter.

5. This Declaration details the Class Certification Notice Plan ("Notice Plan" or "Notice Program") proposed for *Glasscock v. Sig Sauer, Inc.*, Case No. 6:22-cv-03095-DPR pending before the District Court for the Western District of Missouri, Southern Division. The facts in this Declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of my business at Verita.

## EXPERIENCE

6. As an industry leader, Verita has been retained to administer more than 7,500 class actions and distributed settlement payments totaling well over a trillion dollars in assets. Our experience includes many of the largest and most complex administrations of both private litigation and of actions brought by state and federal government regulators. As such, we are familiar with, and guided by, Constitutional due process provisions, the Federal Rules of Civil Procedure, and the relevant case law relating to legal notification.

7. Verita has administered notice plans in a wide range of federal consumer class actions, including: *Cicciarella v. Califia Farms, LLC*, No. 7:19-cv-08785 (S.D.N.Y); *Crane v. Sexy Hair Concepts, LLC*, No. 1:17-cv-10300 (D. Mass.); *Elkies v. Johnson & Johnson Services, Inc.*, No. 2:17-cv-07320 (C.D. Cal.); *Eubank v. Pella Corp.*, No. 1:06-cv-04481 (N.D. Ill.); *Flaum v. Doctor's Associates, Inc.*, No. 0:16-cv-61198 (S.D. Fla.); *Friend v. FGF Brands (USA), Inc.*, No. 1:18-cv-07644 (N.D. Ill.); *Lerma v. Schiff Nutrition International, Inc.*, No. 3:11-CV-01056 (S.D. Cal.); *In re Morning Song Bird Food Litig.*, No. 3:12-cv-01592 (S.D. Cal.); *In re Trader Joe's Tuna*

*Litig.*, No. 2:16-cv-01371 (C.D. Cal.); *Khan v. BooHoo.com USA, Inc*., No. 2:20-cv-03332 (C.D. Cal.); *McCrary v. The Elations Company*, LLC, No. 5:13-cv-00242 (C.D. Cal.); *Morrisey v. Tula Life, Inc*., No. 2021L000646 (Cir. Ct. Ill.); *Poertner v. The Gillette Co. and The Procter & Gamble Co.*, No. 6:12-cv-00803 (M.D. Fla.); *Rikos v. The Procter & Gamble Co.*, No. 1:11-cv-00226 (S.D. Ohio); and *Suchanek v. Sturm Foods, Inc*., No. 3:11-cv-00565 (S.D. Ill.). A copy of Verita's resume is attached as **Exhibit 1**.

8. I have personally been involved in many large and significant cases, including *In re Experian Data Breach Litigation*, No. 8:15-cv-01592 (C.D. Cal.), a national data breach class action involving over 15 million T-Mobile consumers whose information was stored on an Experian server; *In re: The Home Depot, Inc., Customer Data Security Breach Litig.,* No. 1:14-md-02583 (N.D. Ga.), a national data breach class action involving over 40 million consumers who made credit or debit card purchases in a Home Depot store; *In re: Skelaxin (Metaxalone) Antitrust Litigation*, No. 1:12-md-02343 (E.D. Tenn.), a multi-state antitrust settlement involving both third party payors and consumers that purchased or paid for the brand and generic version of the prescription drug metaxalone; *Chambers v. Whirlpool Corporation*, No. 8:11-cv-01733 (C.D. Cal.), a national product defect case involving class members who experienced or may experience the overheating of an automatic dishwasher control board; *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.), perhaps the largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million data breach settlement; and *In re Residential Schools Litigation*, No. 00-CV-192059 (Ont. S.C.J.), the largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

9.  In forming my opinions, I draw from my in-depth class action case experience. I have worked in the class action notification field for more than 20 years. During that time, I have been involved in all aspects in the design and implementation of class action notice planning, as well as the drafting of plain language notice documents that satisfy the requirements of Rule 23 and adhere to the guidelines set forth in the *Manual for Complex Litigation, Fourth* and by the Federal Judicial Center ("FJC").

10. The reach of the Notice Program is consistent with other effective court-approved notice programs. Additionally, the Notice Program is intended to comply with the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (the "FJC Checklist"), which considers at least 70% reach among class members to be reasonable.

## NOTICE PLAN

### *Proposed Class Definition*

11. According to Plaintiff Counsel, Plaintiff seeks to certify a class on behalf of:

> All persons who purchased a Sig Sauer model P320 pistol without an external thumb safety primarily for personal, family or household purposes in the state of Missouri from September 1, 2017, through the present.
>
> Excluded from the class are (1) individuals who have filed an individual action against Sig Sauer related to the P320, or (2) individuals who no longer own a P320 pistol without an external thumb safety.

12. Rule 23 of the Federal Rules of Civil Procedure directs the best notice practicable under the circumstances including "individual notice to all members who can be identified through reasonable effort." The proposed Notice Plan satisfies this requirement.

### *Individual Notice*

13. It is my understanding that Defendant possesses names and email addresses and/or postal addresses for a portion of the class. It is also my understanding that Plaintiff's Counsel

intends to obtain this information and provide it to Verita for the purpose of providing direct notice to Class Members (the "Class List").

14. Verita will send an Email Nnotice to all Class Members for which an email address is available on the Class List. Prior to distributing the Email Notice, all email addresses will be subject to a cleansing and validation process to, among other things, remove extra spaces and fix common domain name errors, as well as compare addresses against known bad email addresses and verify email existence with Internet Service Providers ("ISPs").

15. The Email Notice will be formatted to avoid common "red flags" that could cause the email to be blocked by spam filters. For example, the content of the notice will be placed in the body of the email rather than as an attachment to avoid spam filters and improve deliverability. The Email Notice will contain a link to the case website.

16. The email campaign will return data regarding the number of emails successfully delivered and email bouncebacks.

17. Any email known not to have been successfully delivered will be subject to a reverse email append process in an effort to locate a postal address associated with the email address. Any postal addresses successfully located will be added to the Class List for mailing purposes.

18. Verita will send a Postcard Notice to all postal addresses available on the Class List. The Postcard Notice will be mailed via United States Postal Service (USPS) first class mail. Prior to mailing, the postal addresses will be checked against the National Change of Address

(NCOA)[1] database maintained by the USPS; certified via the Coding Accuracy Support System (CASS);[2] and verified through Delivery Point Validation (DPV).[3]

19. Notices returned by the USPS as undeliverable will be re-mailed to any address available through postal service forwarding order information. For any returned mailing that does not contain an expired forwarding order with a new address indicated, Verita will conduct further address searches using credit and other public source databases to attempt to locate new addresses and will re-mail these notices where possible.

20. In my opinion, providing notice via individual notice to reach the members of the class satisfies the requirements of due process, including the "desire to actually inform" requirement.

*Target Analysis*

21. To develop the media notice campaign and verify its effectiveness, MRI-SIMMONS/comScore multi-platform data[4] was studied among a proxy target of Missouri adults who own a handgun. The reported characteristics, demographics, interests, and media habits of the proxy target aided in the media planning and selection process.

---

[1] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[2] Coding Accuracy Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[3] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

[4] For decades, MRI and Simmons Research conducted two of the most trusted consumer studies in the United States. MRI's 'Survey of the American Consumer' was the gold standard for consumer audiences across industries. In 2021, MRI-Simmons combined these trusted, gold-standard consumer studies to launch MRI-Simmons USA, the most comprehensive study on American consumers. This high-quality, nationally representative study provides marketers, media, and agencies with the most accurate consumer truth set. Released quarterly, MRI-Simmons USA employs address-based probabilistic sampling, measuring real people, randomly chosen to represent the US population in all its variations.

22. The Notice Plan is designed to reach adults residing in the state of Missouri, with an additional emphasis placed on men 35 years of age or older as this demographic is more likely to own a handgun.

*Media Campaign*

23. In addition to the individual notice efforts described above, Verita has created a robust, multi-faceted online media campaign to provide the best notice possible to likely Class Members under the circumstances of this litigation.

24. Verita will implement a media campaign consisting of online advertisements in the form of display banners and social media ads.

25. Approximately 4,525,000 digital impressions will be purchased programmatically via one or more ad exchanges and distributed over various websites and via the social media platform Facebook. The impressions will be targeted to men 35 years of age or older located in the state of Missouri, as well as to adults in the state of Missouri who have displayed an interest in shooting or shooting ranges, are in-market for shooting gear, have visited a shooting range, etc., and/or are employed in or interested in protective services and/or the military.

26. The notices will appear on both desktop and mobile devices, including tablets and smartphones, in display and native ad formats. All digital media notices will include an embedded link to the case website.

27. The digital media campaign will be monitored by Verita's digital specialists to analyze key campaign performance indicators and make real-time modifications, as needed.

*Response Mechanisms*

28. Verita will establish and maintain a case-specific website to allow Class Members to obtain additional information about the litigation. Class Members will be able to view,

download, and/or print the long form notice, the operative Class Action Complaint, Defendant's Answer to the Class Action Complaint, the Court's Class Certification Order, and other relevant documents and court filings. Class Members will also be able to review a list of frequently asked questions and answers and important dates and deadlines.

29. Verita will establish a case-specific toll-free number to allow Class Members to call to learn more about the litigation in the form of frequently asked questions and request to have additional information mailed to them.

## CONCLUSION

30. In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, and by case law pertaining to the recognized notice standards under Rule 23. This framework directs that the Notice Plan be optimized to reach the class and, in a class certification class action notice situation such as this, that the notice or Notice Plan itself does not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way. All of these requirements will be met in this case.

31. The Notice Plan includes individual, direct emailed or mailed notice to all Class Members who can be identified with reasonable effort. When combined, the direct notice efforts and media campaign are expected to reach approximately 85% of likely Class Members. The case website will also expand the reach of the notice further.

32. In my opinion, the Notice Plan proposed is consistent with other effective notice programs. It provides the best notice practicable under the circumstances of this case and meets the "reasonably certain to inform" due process communications standard of *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The Notice Plan is consistent with the

guidelines set forth in Rule 23, the *Manual for Complex Litigation, Fourth Ed.*, and the Federal Judicial Center's 2010 *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* which considers 70-95% reach among class members to be a "high percentage" and reasonable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of November 2024, at Ocean City, New Jersey.

*Carla Peak*

Carla A. Peak

# Exhibit 1

# Settlement Administration Services Resume



## Introduction

With Verita you receive unparalleled legal administrative services, delivered with a combination of unrivaled industry-leading expertise, personable & professional client service, and innovative technology solutions. We deliver a cost-effective strategy for every settlement, big or small, and bring it to life with a scalable service infrastructure and secure data management.

Together, that means unmatched support for your critical business processes and transactions.

## Our Credentials

Verita has earned both national and international industry awards and recognition for our services, leadership, progressive business model, and growth. The Verita team brings extensive experience to your business, having administered over 10,000 matters and distributed more than $2 billion (USD) annually for the last 10 years.

Looking further back, our highly experienced team has decades of unrivaled experience managing some of the most complex engagements in history.

**$2 billion (USD)**
Distributed annually for the last 10 years

**10,000+**
Matters administered across multiple industries and at various scales

## Our Approach

Verita's team knows the intricacies of settlement administration inside and out — and can help you build a clear, effective plan for every situation. That starts at the onset of each engagement when we develop an efficient, cost-effective strategy based on the terms of your settlement.

Our domestic infrastructure — one of the largest in the industry — includes a scalable call center capable of handling hundreds of thousands of calls per year, as well as the production capacity to produce and mail millions of documents annually. Our scalable administration services allow our experts to effectively serve the needs of both counsel and class members, ensuring comprehensive support throughout every aspect of the settlement process.



# Data Security & Insurance

Trustworthy data security is crucial to maintaining your clients' confidence and delivering reliable, frictionless results. To that end, Verita maintains a comprehensive security program designed to ensure the protection and secure handling of client data. Verita's information security framework is aligned to ISO 27001 and ISO 27002, and is kept up-to-date with annual reviews

**That includes policies governing:**

- Data Security
- Asset Management
- Access Control
- Cryptography
- Physical and Environmental
- Operations Security
- Vulnerability Management
- System Development & Maintenance
- Vendor Management
- Incident Management
- Business Continuity
- Compliance

To ensure industry-leading security standards across your team, all Verita employees undergo a comprehensive and continuous training and awareness program.

Verita is prepared for engagements across practically any sector and offers GDPR, CCPA, and HIPAA compliant solutions to meet the needs of any administration. To further reduce risk, we limit the collection of Personally Identifiable Information, taking only the minimal data points necessary for our services. For additional peace of mind, Verita possesses all relevant insurance, including professional indemnity insurance, general liability, property, comprehensive crime, electronic and computer crime, and cyber liability insurance.

# Verita Personnel

Every engagement is assigned a team of experienced consultants, specialists, and technology experts. They serve as knowledgeable, accessible partners you can depend on for the duration of your engagement — and have earned their reputation for careful analysis, procedural integrity, and consistently exceeding clients' expectations.

Regardless of who is assigned to your team, our dedicated personnel have decades of experience both within Vertia and throughout the legal industry. Vertia's professionals are trained both formally and in practice, carrying trusted credentials for their areas of expertise. This includes undergraduate and master's business degrees, information technology certifications, and law degrees, as well as licenses and certificates in relevant disciplines.

Verita's main offices are in El Segundo, CA; San Rafael, CA; and London, ON; with a robust presence across North America and globally.


veritaglobal.com

# Settlement Value

| | |
|---|---|
| In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig. | $1,690,000,000 |
| Ageas SA/NV v. Vereniging van Effectenbezitters (aka Fortis) | $1,573,000,000 |
| Steinhoff International Holdings N.V | $941,000,000 |
| Ramah Navajo Chapter v. Jewell | $940,000,000 |
| Federal Trade Commission v. The Western Union Co. | $586,000,000 |
| Vaccarino v. Midland National Life Ins. Co. | $555,000,000 |
| In re Facebook Biometric Info. Privacy Litig. | $550,000,000 |
| Safeco Insurance Company of America v. American International | $450,000,000 |
| Johnson v. Caremark Rx, LLC | $310,000,000 |
| In re Activision Blizzard, Inc. Stockholder Litig. | $275,000,000 |
| N.J. Carpenters Health Fund v. Royal Bank of Scotland Group, PLLC | $275,000,000 |
| Dial Corp. v. News Corp. | $244,000,000 |
| In re Medical Capital Securities Litig. | $219,000,000 |
| In re NCAA Athletic Grant-In-Aid CAP Antitrust Litig. | $209,000,000 |
| Gutierrez v. Wells Fargo Bank, N.A. | $203,000,000 |
| Rimler v. Postmates Inc. | $179,000,000 |
| In the Matter of BlueCrest Capotal Management Ltd. | $170,000,000 |
| Bell v. Farmers Insurances Exchange | $170,000,000 |
| In re Diamond Foods, Inc. Securities Litig. | $167,000,000 |
| In re JPMorgan Chase Co. Securities Litig. | $150,000,000 |
| Haddock v. Nationwide Life Insurance Co. | $140,000,000 |
| In re Freeport-McMoran Copper & Gold Inc. Derivative Litig. | $138,000,000 |
| Bank of America NA v. El Paso Natural Gas Co. | $115,000,000 |
| In re Anthem, Inc. Data Breach Litig. | $115,000,000 |
| In re Medical Capital Securities Litig. | $114,000,000 |
| Drywall Acoustic Lathing and Insulation Local 675 Pension Fund v. SNC-Lavalin Group Inc. | $110,000,000 |
| In re Automotive Parts Antitrust Litig. | $103,000,000 |
| In re Rural Metro Corp. Stockholders Litig. | $98,000,000 |
| Marcu v. J.C. Penney Co., Inc. | $97,000,000 |
| Various state and territorial courts v. U.S. Tobacco Co. | $96,000,000 |
| Oubre v. Louisiana Citizens Fair Fund | $93,000,000 |
| Ardon v. City of Los Angeles | $92,000,000 |
| Nishimura v. Gentry Homes, Ltd. | $90,000,000 |
| In re Potash Antitrust Litig. (No. II) | $90,000,000 |
| Ormond v. Anthem, Inc. | $90,000,000 |
| In re Dynamic Random Access Memory (DRAM) Antitrust Litig. | $88,000,000 |
| In re Morning Song Bird Food Litig. | $85,000,000 |
| Ideal v. Burlington Resources Oil & Gas Co. LP | $85,000,000 |
| Willoughby v. DT Credit Corp. (Drivetime) | $78,000,000 |
| Bake v. Saint-Gobain Performance Plastics Corp. | $62,000,000 |



## Class Size

| | |
|---|---|
| Edwards v. National Milk Producers Federation | 90,000,000 |
| In re Anthem, Inc. Data Breach Litig. | 80,000,000 |
| In re Carrier IQ, Inc. Consumer Privacy Litig. | 47,000,000 |
| The Home Depot, Inc. Customer Data Security Breach Litig. | 40,000,000 |
| In re Midland Credit Mgmt., Inc. TCPA Litig. | 30,000,000 |
| Golden v. ContextLogic Inc., d/b/a Wish.com | 29,000,000 |
| Cassese v. Washington Mutual, Inc. | 23,000,000 |
| In re Wawa, Inc. Data Security Litig. | 22,000,000 |
| Rael v. The Children's Place, Inc. | 22,000,000 |
| In re Optical Disk Drive Antitrust Litig. | 20,000,000 |
| In re UltraMist Sunscreen Litig. | 20,000,000 |
| Torres v. Wendy's International, LLC | 18,000,000 |
| In re Lithium Ion Batteries Antitrust Litig. | 16,000,000 |
| In re Facebook Biometric Info. Privacy Litig. | 15,000,000 |
| Gordon v. Verizon Communications, Inc. | 15,000,000 |
| In re Experian Data Breach Litig. | 15,000,000 |
| Opperman v. Kong Technologies, Inc. | 13,000,000 |
| Lerma v Schiff Nutrition International, Inc. | 12,000,000 |
| Kolinek v. Walgreen Co. | 10,000,000 |
| Dunstan v. comScore, Inc. | 10,000,000 |
| Consumer Financial Protection Bureau v. Sprint Corporation | 9,000,000 |
| Steinfeld v. Discover Financial Services | 9,000,000 |
| Cohen v. FedEx Office and Print Services, Inc. | 9,000,000 |
| Elvey v. TD Ameritrade, Inc. | 9,000,000 |
| In re Monitronics Int'nl, Inc. TCPA Litig. | 8,000,000 |
| In re Portfolio Recovery Associates TCPA Litig. | 7,000,000 |
| Morrow v. Ascena Retail Group, Inc. | 7,000,000 |
| Shames v. Hertz Corp. | 7,000,000 |
| Roberts v. Electrolux Home Products, Inc. | 6,000,000 |
| Chambers v. Whirlpool Corp. | 6,000,000 |
| Martin v. Safeway Inc. | 6,000,000 |
| Morales v. Conopco Inc. dba Unilever | 5,000,000 |