# EXHIBIT 28

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MISSOURI

------------------------- x

| | | |
|---|---|---|
| JOSHUA GLASSCOCK, | : | |
| Plaintiff, | : | Civil Action No. |
| v. | : | 22-CV-3095-SRB |
| SIG SAUER, INC., | : | |
| Defendant. | : | |

------------------------- X

(Continued from 3/15/24)

Remote Zoom Deposition Transcript of

JAMES THOMAS FAULKNER

Tuesday, May 28, 2024

9:32 AM to 9:58 AM CST

U.S. Legal Support Job No.: 6612353-001

Pages: 106 - 131

Reported by: Melody Stephenson, BBA,

FCRR, CRR, CRC, RPR, RSA, MO CCR 406, IA CSR 974

1 have in front of me.
2    Q  And this is what they provided you when
3 you asked for a copy of your receipt; correct?
4    A  Yes, ma'am.  They -- they told me that
5 they couldn't actually give me the actual receipt,
6 which, honestly, kind of surprised me.  But they
7 said that they -- they didn't keep receipts from
8 that far back, so this was the only paperwork that
9 they could give me.  They said that it should
10 qualify because it -- it should have the same date
11 as the purchase receipt on there due to everything
12 being taken care of on the same day.
13    Q  Great.  And how long did it take for
14 Academy Sports to provide this record to you once
15 you requested it?
16    A  Only about 15 minutes.  I did it there in
17 person in the store.  I had -- I had made a couple
18 calls and things like that, and they just told me
19 that this was -- that was the best way to get it.
20 So I just went back to the firearms department
21 there at Academy and told them what I needed, and
22 they -- they talked with their supervisor, and
23 then this is what they were able to provide me.
24    Q  And so they instructed you that the best
25 way to get it is to go in person to the store

1  Honestly, I do not know which one of those is the
2  date that -- I mean, I would assume the
3  certification date, since it's by my signature,
4  would be the one where it was purchased.  But it's
5  one of -- it is one of those two dates, yes.
6       Q  No, I think you are right.  It looks
7  like -- okay.  So the certification.  So
8  August 17th, 2018; correct?
9       A  It would be August 7th of 2018 is that
10 certification date; yes, ma'am.
11      Q  And do you recall the method of purchase?
12 Did you, say, for example, purchase the -- the
13 pistol by cash?
14      A  I believe so, yes.
15      Q  And did you check your wife's credit card
16 records for proof of a transaction for the pistol?
17      A  Yes, I did.  Originally, as we were
18 talking about earlier, when I thought that that
19 was how the firearm was purchased, we went through
20 and dealt with the credit card company and weren't
21 able to find any transaction that would match up
22 with the purchase of that firearm on her Academy
23 credit card.
24      Q  And did she then take out that Academy
25 credit card as part of the purchase of the P320

1  knowledge is that they wouldn't be able to just
2  look at their -- the history of the credit card,
3  and they wouldn't be able to know if it was
4  attached to another purchase or not.
5      Q  And do you recall that during your
6  deposition, on March 15th, you testified that you
7  believed that you paid approximately $700 for the
8  P320?
9      A  I believe that's correct.
10     Q  And do you have an understanding of what
11 that estimation or guess was based on?
12     A  I believe it was based on the -- the --
13 the information I gathered before purchasing the
14 firearm.  Usually, that's -- that's what I'll do.
15 It was -- it was an anniversary present from my
16 wife.  And that being said, she told me that I
17 could -- her present to me was going out and
18 getting a firearm of my choice, but we also talked
19 about price and -- and that kind of thing as well.
20 So that would -- that would be what I'm basing
21 that off of.
22     Q  And there's no way for you determining the
23 exact amount that you paid for the pistol;
24 correct?
25     A  Correct.  Seeings how I paid for it in

```
 1  cash and there's -- they can't provide the
 2  purchase receipt, no, I -- I couldn't positively
 3  say that that's exactly what it was, but that's
 4  the best of my memory.
 5      Q  Mm-hmm.  And when you had come up with
 6  that estimation previously, you were not
 7  considering the possibility that you may have
 8  received a discount through the opening of your
 9  wife's credit card; correct?
10      A  Correct.
11      Q  Okay.  I'm going to now show what was
12  previously marked at your deposition as
13  Exhibit 4 [sic].  Can you let me know when you're
14  ready?
15          ("Exhibit 4" referred to in this
16  deposition is actually Exhibit 6.)
17          MR. SOWERS:  One moment.  I'm pulling it
18  up.  Is it a series of text messages?
19          MS. GULLIVER:  That's correct.
20          MR. SOWERS:  Okay.
21      Q  (By Ms. Gulliver)  And do you recall
22  seeing this exhibit previously?
23      A  Yes, ma'am.
24      Q  Now, I just want to refer you to the
25  exchange saying shorthand, Thursday, April 20th --
```

CERTIFICATE OF SHORTHAND REPORTER

I, Melody Stephenson, the officer before whom the foregoing deposition was taken, do hereby certify that the foregoing transcript is a true and correct record of the testimony given; that said testimony was taken by me stenographically and thereafter reduced to typewriting under my direction; that reading and signing was requested; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

*Melody Stephenson*

_____
Melody Stephenson, Certified Court Reporter, BBA, FCRR, CRR, CRC, RPR, RSA, MO CCR 406, IA CSR 974