IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JOSHUA GLASSCOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:22-cv-03095-MDH |
| | ) | |
| SIG SAUER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**Motion to Intervene for the Limited Purpose of Moving
to Unseal Exhibits to Class Certification Briefing**

Trace Media, Inc., which owns and operates the news website *The Trace*, moves this Court, pursuant to Federal Rule of Civil Procedure 24(b), to intervene in this action for the limited purpose of moving to unseal the exhibits to the parties' class certification briefing and to require the parties to file unredacted class certification suggestions. In support of its motion, movant states as follows:

*The Trace*

1. Trace Media, Inc. is a non-profit journalism organization which owns and operates *The Trace*, an online news website which reports on gun violence.

2. *The Trace* was established more than ten years ago and operates the only newsroom in the country dedicated to reporting on gun violence.

3. *The Trace* regularly partners with other national publications, such as *The Atlantic*, *Newsweek*, and *Time*, which do not have journalists dedicated to gun violence.

4. *The Trace* has frequently reported on the allegations that the Sig Sauer P320 is prone to accidental discharges.

5. For example, in 2023, *The Trace* and the *Washington Post* jointly published the results of an investigation into those claims in a 4,500-word report titled "One of America's favorite handguns is allegedly firing on its owners."[1]

6. The parties have included the jointly-published article as an exhibit to their class certification briefing. (*See* ECF No. 121-18).

7. Just last month, *The Trace* reported that police departments across the country are dropping the P320 due to concerns about the gun's safety, but are often reselling their P320s to unsuspecting buyers, creating an ethical minefield.[2]

8. *The Trace* has specifically covered litigation concerning the alleged safety defect in the P320, including a $2.35 million jury verdict last year in Georgia in a case in which the jury found the P320 was defectively designed.[3]

9. The Washington State Criminal Justice Training Commission cited this report from *The Trace* in an "immediate action" bulletin it sent to all law enforcement agencies in Washington concerning "a serious safety concern with the Sig Sauer P320." (*See* ECF No. 121-21).

**The underlying lawsuit**

10. In 2022, Plaintiff Joshua Glasscock brought this lawsuit as a proposed class action. (ECF No. 1).

11. Glasscock alleges in his lawsuit that the P320 "is one of the most popular handguns in the United States." (ECF No. 1 ¶ 2).

---

[1] https://www.thetrace.org/2023/04/sig-sauer-p320-upgrade-safety/
[2] https://www.thetrace.org/2025/05/sig-sauer-p320-police-resale-public/
[3] https://www.thetrace.org/2024/06/sig-sauer-p320-lawsuit-safety-issues/

12. He further alleges the P320 lacks safety features of comparable handguns sold by Sig Sauer's competitors and, as a result, "inadvertently discharges at a higher rate than comparable pistols." (ECF No. 1 ¶ 3).

13. Glasscock alleges that these design defects in the P320 results in "dangerous consequences for its users." (ECF No. 1 ¶ 35).

14. Glascock alleges more than twenty lawsuits have been filed against Sig Sauer "alleging the P320 discharged without the trigger being pulled." (ECF No. 1 ¶ 37).

15. Glascock also alleges that "[a]t the time that Sig Sauer designed, manufactured, and marketed the P320 firearms it knew or should have known that the defective pistols pose serious safety risks to consumers." (ECF No. 1 ¶ 83).

16. Moreover, Glasscock alleges that despite Sig Sauer's knowledge of the inherent risks posed by the P320, Sig Sauer did not warn purchasers—or users—of the weapon's defects. (ECF No. 1 ¶ 84-90).

**The Protective Order**

17. In 2022, the Honorable Stephen R. Bough entered a Stipulated Protective Order, which allows the parties to designate documents produced during discovery as either "Confidential" or "Highly Confidential." (ECF No. 38 Sec. II).

18. The Protective Order states that "[e]ach party … must take care to limit any such designation to specific material that qualifies under the appropriate standards" and that "[i]ndiscriminate or routinized designations are prohibited." (ECF No. 38 ¶ 23).

19. The Protective Order provides that "Material designated 'Confidential' or 'Highly Confidential' in accordance with this protective order may be filed under seal." (ECF No. 38 ¶ 38).

20. The Protective Order does not comply with Judge Bough's "Agreed Protective Order Guidelines and Model Order" from that time, which state as follows: "The mere designation of information as confidential pursuant to this Order is insufficient to satisfy the Court's requirements for filing under seal in light of the public's qualified right of access to court dockets. *See IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013)." (Guidelines at 2-3; Model Protective Order ¶ 7).[4]

**Class Certification Briefing**

21. On November 5, 2024, Plaintiff filed his motion for class certification and suggestions in support, numerous pages of which contain redactions. (*See, e.g.*, ECF No. 121 at 2, 9, 10, 13, 16, 17, 18, 21, 24, 25, 27, 28).

22. Glasscock attached 31 exhibits to his motion; half of which are filed under seal. (*See, e.g.*, ECF Nos. 121-1, 121-4, 121-5, 121-6, 121-9, 121-11, 121-12, 121-13, 121-14, 121-16, 121-17, 121-22, 121-25, 121-26, 121-27).

23. On March 31, 2025, Sig Sauer filed its response to the class certification motion, which is riddled with redactions. (*See, e.g.*, ECF No. 154 at i, ii, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 23, 24, 25, 26, 28, 31, 35, 37, 39, 40, 41, 43).

24. Sig Sauer attached 32 exhibits to its response; ten of which are filed under seal. (*See, e.g.*, ECF No. 154-2, 154-3, 154-5, 154-7, 154-9, 154-13, 154-14, 154-16, 154-17, 154-18, 154-26).

---

[4] Order Guidelines and Model Order from the Internet Archive at https://web.archive.org/web/20201017192744/https://www.mow.uscourts.gov/sites/mow/files/SRB_agreed_protective_order_guidelines_form_0.pdf (captured Oct. 17, 2020).

Judge Bough's current Order Guidelines and Model Order are identical in all relevant respects. https://www.mow.uscourts.gov/sites/mow/files/SRB_agreed_protective_order_guidelines_form_0.pdf.

4

25. Another of Sig Sauer's exhibits is a 21-page Declaration of Sig Sauer's Executive Vice President, every word of which is redacted. (*See, e.g.*, ECF No. 154-2).

26. On April 28, 2025, Plaintiff filed his reply in support of his motion for class certification, which again has numerous pages that contain redactions. (*See, e.g.,* ECF No. 166 at 8, 10, 11, 15, 21).

27. In each case, when the parties sought leave to make their filings under seal, they stated simply: "portions of [insert filing name] may need to be filed under seal to comply with the Court's Protective Order." (*See, e.g.*, ECF Nos. 122, 155, 165).[5]

28. Each time, the Court granted the motion for leave to file under seal in a text entry. (*See, e.g.*, ECF No. 127, 157, 168).

## *The Trace*'s right to intervene

Rule 24(b)(1)(B) provides that "the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." The Eighth Circuit has explained that "[w]here a party is seeking to intervene in a case for the limited purpose of unsealing judicial records, … it is the public's interest in the confidentiality of the judicial records that—'in the language of Rule 24(b)(2)—[is] a question of law ... in common between the Parties [to the original suit] and the [would-be intervener].'" *Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015) (per curiam). "Accordingly, permissive intervention under Rule 24(b) is an appropriate procedural vehicle for non-parties seeking access to judicial records in civil cases." *Id*.

---

[5] It appears the only reason Glasscock sought to file his exhibits under seal is because they contain information designated as confidential by Sig Sauer. (*See* ECF No. 121-23). It does not appear that Glasscock himself claims confidentiality as to his information.

**The public's right of access to judicial records**

"There is a common-law right of access to judicial records." *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). "This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings, and 'to keep a watchful eye on the workings of public agencies.'" *Id.* (quoting *Nixon*). "It also provides a measure of accountability to the public at large, which pays for the courts." *Id.* "[T]he common-law right of access applies to judicial records in civil proceedings." *Id.*

While the right of access is not absolute, it creates a "presumption of public access to judicial records." *United States v. Gray*, 59 F.4th 329, 333 (8th Cir. 2023). "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts." *IDT Corp.*, 709 F.3d at 1224.

As the Eighth Circuit has explained, "judicial records and documents generally will 'fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'" *Id.* at 1223 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir.1995)). When matters directly affect an adjudication, the presumption of access can only "be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018).

Class certification directly relates to the adjudication of a matter. This much is plain from the text of Rule 23(a), which explicitly requires the Court to examine "questions of law or fact" and "the claims or defense of the representative parties." Fed. R. Civ. P.

6

23(a)(2)-(3). The Eighth Circuit has said the same. "'The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 783 (8th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

Sig Sauer itself acknowledges the symbiotic relationship between class certification and the merits in its opposition to Plaintiff's motion for class certification, when it states: "Certification is appropriate only where, after a 'rigorous analysis,' the Court determines Rule 23 is satisfied. Courts may "'probe behind the pleadings ....' [which] will frequently entail 'overlap with the merits of the [] underlying claim**." (ECF No. 154 at 26) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013)). True to its word, Sig Sauer makes repeated arguments that go to the merits of Glasscock's claim, including lack of Article III standing (ECF No. 154 at 27-29), "failure to establish nearly every MMPA element" (ECF No. 154 at 31), lack of "a viable damages model "(ECF No. 154 at 42-43), etc.

Because the parties' class certification briefing goes to the core of this Court's power to adjudicate claims, the presumption of access can only be overcome if the party seeking to keep the records secret can show a compelling reason to do so. *See Nagel v. United Food & Com. Workers Union*, No. 18-CV-1053 (WMW/ECW), 2020 WL 6145111, at *3 (D. Minn. Oct. 20, 2020) ("the fact that the document was filed in conjunction with a motion for class certification" requires the party seeking to maintain the seal to "provide compelling reasons to overcome the presumption" of public access).

**Sig Sauer has provided no reasons, much less *compelling* reasons, to seal the briefing**

Before a court can close a judicial record, it must explain why sealing is appropriate and why less restrictive alternatives are not appropriate. *See In re Search Warrant for*

*Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988). The court's findings must be specific enough to enable a higher court to determine whether closure was warranted. *Id*. Here, the only basis either party gave for sealing was "to comply with the Court's Protective Order." (*See, e.g.*, ECF Nos. 122, 155, 165). And in each case, the Court granted the motion to seal in a text order which provided no additional basis for sealing. (*See, e.g.*, ECF Nos. 127, 157, 168). This is plainly insufficient under *Gunn*.

The Protective Order provides that "Confidential Materials" are materials "that qualif[y] for protection under Federal Rule of Civil Procedure 26(c)." (ECF No. 38 Sec. II). Rule 26(c), in turn, provides that a court may issue a protective order upon a showing of "good cause." Fed. R. Civ. P. 26(c)(1).

"Good cause" under Rule 26(c) and "compelling reasons" under binding Eighth Circuit precedent are two different standards. *See Marden's Ark, Inc. v. UnitedHealth Grp., Inc.*, 534 F. Supp. 3d 1038, 1050 (D. Minn. 2021) ("[e]ven if 'good cause' were the applicable standard (and it is not) …"); *Hudock v. LG Elecs. U.S.A., Inc.*, No. 0:16-CV-1220-JRT-KMM, 2020 WL 2848180, at *2 (D. Minn. June 2, 2020) (comparing the "stricter 'compelling reason'" standard to the "more lenient 'good cause'" standard).

But Sig Sauer has not met even the "good cause" standard. For example, the first "fact" that Sig Sauer sets forth in its brief is:



(ECF No. 154 at 2). How is what "Sig Sauer is" confidential? Sig Sauer does not explain.

8

Sig Sauer also redacted its evidence that it is not "biased against the media."



(ECF No. 154 at 25 n.15). Sig Sauer's claim—juxtaposed with a series of black boxes—is the paradigm of irony.

There are still more examples in Glasscock's briefing of Sig Sauer's lack of good faith in designating information as "Confidential." Exhibit 1 to Glasscock's motion for class certification is "a true and correct copy of a Sig Sauer P320 advertisement that was produced by Sig Sauer in this litigation, SIG-MARKETING-000042." (ECF No. 121-23 ¶ 2). Glasscock cites to this exhibit in his first "fact" in his brief.



(ECF No. 121 at 9).

In just five minutes, counsel for *The Trace*—using nothing more than the title of the ad—found what appears to be the "confidential" photo of the P320 online in the January-February 2017 edition of Recoil magazine.



It is simply inconceivable that there is "good cause" to claim that a photo of a gun in an ad from a national gun magazine contains confidential information that must be redacted from public court filings.

**Sig Sauer cannot show compelling reasons to seal the briefing**

The Eighth Circuit has explained that in determining whether the proponent of sealing has established the requisite "compelling reasons" to seal judicial records, the court must "weigh[] the competing interests." *IDT Corp. v. eBay*, 709 F.3d 1220, 1224 (8th Cir. 2013); *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990); *see S.C. v. Dirty World, LLC*, No. 11-CV-392, 2011 WL 13334174, at *1 (W.D. Mo. June 1, 2011).

Here, the public's interest in disclosure of the exhibits to the parties' class certification briefing (and the unredacted briefs themselves) is strong for a number of reasons.

First, "[t]he presumptive right of access is further heightened in class action suits where members of the public are involved." *Nagel*, 2020 WL 6145111, at *2.

Second, this is not a class action about junk faxes, or about timeshares, but about a handgun which is sold to the public and which is alleged to be dangerously defective. Moreover, Glasscock alleges that Sig Sauer is aware of the dangerous nature of the P320 and has both (a) hidden those dangers from the public, and (b) led consumers to believe the gun is safe.

This is particularly problematic because the Consumer Product Safey Commission has no jurisdiction over firearms. *See* 15 U.S.C. § 502(a)(5)(E) (incorporating 26 U.S.C. § 4181). As a result, federal regulators play no role in promoting public awareness of the potential dangers to owning a P320 regulators. "[C]ompared with most other consumer products, guns are virtually unregulated. Guns are not under the auspices of the Consumer Product Safety Commission, which regulates the safety of virtually every other U.S. consumer product. A child's teddy bear or a child's squirt gun is more closely regulated than a handgun in this country." Harold H. (Kip) Reader, *Are Guns the Next Tobacco*?, American Bar Association, *Brief*, Spring 1999, at 2.

Accordingly, public awareness of the potential problems with the P320 must come from other sources, such as the media and the courts. Thus, the public interest in this case is palpably manifest.

Third, not only is the P320 sold to the public, it is also sold to hundreds of law enforcement agencies and officers, who have been seriously injured when their P320

11
80549083v1
Case 6:22-cv-03095-MDH    Document 181    Filed 07/17/25    Page 11 of 15

accidentally discharged. This is Officer Kevin Currington of the La Grange, Texas Police Department, who nearly bled to death and suffered permanent nerve damage when "[i]t went off in the holster. I wasn't even touching it."[6]



The Eighth Circuit has specifically recognized the public interest in protecting law enforcement officers, soldiers, etc., from defective weapons. In a case involving a defective hand grenade that injured a soldier, the court wrote: "We believe the public interest in human life and health requires the protection of the law against the manufacture of defective explosives, whether they are to be used by members of the public at large or members of the public serving in our armed forces." *Foster v. Day & Zimmermann, Inc.*, 502 F.2d 867, 871 (8th Cir. 1974).

As such, there is no question the need for public access to the documents relating to allegations that a defective handgun has been sold to consumers and law enforcement is of the highest order.

---

[6] https://cbsaustin.com/news/local/it-happened-again-texas-officer-injured-by-holstered-sig-sauer-p320

12
80549083v1
Case 6:22-cv-03095-MDH    Document 181    Filed 07/17/25    Page 12 of 15

It is hard to tell the competing interest being asserted by Sig Sauer, given that it failed to set forth any ground for sealing the documents except "to comply with the Court's Protective Order." (ECF No. 155). But the Protective Order broadly allows documents to be designated "Confidential" simply because they contain "confidential" "commercial" or other "non-public information of commercial value." (ECF No. 38 Sec. II).[7] Even if this is sufficient grounds to apply a discovery designation, it is not good cause to limit the public's right of access.

To the contrary, such blunderbuss designations are legally insufficient. In a class action lawsuit against UnitedHealth Group ("UHG"), the defendant claimed documents should be sealed because they contained "confidential commercial information" that was "not publicly available[,] the disclosure of which could harm UHG in the marketplace." *Marden's Ark, Inc. v. UnitedHealth Grp., Inc.*, 534 F. Supp. 3d 1038, 1048 (D. Minn. 2021).

The court rejected UHG's argument, noting that "UHG has blindly designated information as 'proprietary' apparently in hopes that bald assertions of competitive harm will induce the Court to seal these documents." *Id.* at 1050. "UHG's argument amounts to little more than the incantation of buzzwords that provide no substantive justification for sealing." *Id.*

Like Sig Sauer, UHG also claimed that a sworn declaration and the defendant's own memorandum of law should be treated as confidential. But as the court explained,

---

[7] The Protective Order also allows the parties to designate documents as "Highly Confidential," which is defined as material which a party reasonably believes "would create a substantial risk of serious financial or other injury" if revealed. (ECF No. 38 Sec. II). Tellingly, all the documents which Sig Sauer filed under seal were designated "Confidential;" none were designated "Highly Confidential." (*See* ECF No. 154-1).

"[t]he documents at issue—a declaration and attachments (written discovery) and a memorandum of law—are not themselves business records." *Id*. at 1049.

Accordingly, the court had little trouble finding that UHG has failed to overcome the presumption of public access. "Though the information may be embarrassing, it reveals nothing about UHG's proprietary system or contracts. Moreover, the information is the very heart of Plaintiff's allegations against UHG—it is what the lawsuit is about." *Id*.

The same is true here. The "confidential" declarations which Sig Sauer submits are dated shortly before Sig Sauer filed its opposition to Glasscock's motion for class certification (*See* ECF Nos. 154-2, 154-3, 154-5, 154-9, 154-16, 154-17, 154-17). And two "reports" (presumably by expert witnesses) are dated the day before, and the day of, Sig Sauer's opposition. (See ECF Nos. 154-7, 154-26). As such, both the declarations and the reports are apparently directly relevant to "what the lawsuit is about."

Glasscock has similarly filed what appears to be his expert witness reports under seal, presumably because they contain information which Sig Sauer designated as "Confidential" under the Protective Order. (*See* ECF Nos. 121-4, 121-5, 121-11).

Finally, both parties spend a substantial portion of their brief discussing (in redacted form) a "Failure Modes, Effects, and Criticality Analysis," or FMECA, performed on one or more variants of the P320. (*See, e.g.,* ECF Nos. 121 at 16-18; 154 at 26, 31, 37; 166 at 8, 10-11). The FMECA itself appears to be Exhibits 13 and 14 to Glasscock's motion for class certification. (See ECF Nos. 121-13, 121-14).

It unquestionable that a report on the P320 titled "Failure Modes, Effects, and Criticality Analysis" contains "information [at] the very heart of Plaintiff's allegations against

[Sig Sauer]—it is what the lawsuit is about." *Marden's Ark,* 534 F. Supp. 3d at 1049. The presumption of access to such material is at its zenith.

## Conclusion

If the information in the sealed exhibits and the redacted briefs exonerates Sig Sauer, it serves Sig Sauer to have that information made public. If, on the other hand, the information in the sealed exhibits corroborates (even in part) Glasscock's allegations, it serves the public (and the hundreds of law enforcement officers who carry the Sig Sauer sidearm every day) to have that information made public.

Accordingly, *The Trace* asks this Court to grant its motion to intervene for the limited purpose of moving to unseal the exhibits to the parties' class certification briefing and to require the parties to file unredacted class certification suggestions, together with such other and further relief as this Court deems just.

Dated: July 17, 2025

Respectfully submitted,

LATHROP GPM LLP

By: */s/ Bernard J. Rhodes*
Bernard J. Rhodes  MO #29844
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108-2684
Tele: (816) 292-2000; Fax: (816) 292-2001
Email: bernie.rhodes@lathropgpm.com

ATTORNEYS FOR MOVANT TRACE MEDIA, INC.