# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOSHUA GLASSCOCK,** on behalf of himself and all others similarly situated, | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) ) | **Case No. 6:22-cv-03095-MDH** |
| **SIG SAUER, INC.,** | ) ) | |
| **Defendant.** | ) | |

## ORDER

Before the Court is Plaintiff Joshua Glasscock's ("Plaintiff") Motion for Class Certification and Suggestions in Support. (Doc. 128). Defendant Sig Sauer, Inc. ("Defendant") has filed suggestions in opposition (Doc. 158) and Plaintiff has replied. (Doc. 169). The motion is now ripe for adjudication on the merits. For the reasons set forth herein, Plaintiff's Motion for Class Certification is **GRANTED.**

## BACKGROUND

This case is a putative class action arising out of an alleged defect in the Model P320 pistol ("P320") manufactured by Defendant. Plaintiff is a resident of Polk County, Missouri. Defendant is a Delaware corporation with its principal place of business in Newington, New Hampshire. Plaintiff's class action lawsuit alleges a violation of the Missouri Merchandising Practices Act ("MMPA").

Plaintiff alleges that the defect in the P320 firearm has three components that, when combined, create an unreasonably dangerous product for its reasonably anticipated use. Plaintiff alleges those components are: (1) the P320 is effectively fully energized and ready to fie the instant that a round is chambered; (2) the P320 has a minimal trigger pull because it is short and

1

lightweight; and (3) the P320 lacks any safety features. Collectively, these characteristics constitute the alleged 3-part defect ("Defect"). Plaintiff alleges at the time that Defendant designed, manufactured, and marketed the P320 it knew or should have known that the defective pistols pose serious safety risks to consumers like Plaintiff and members of the proposed class. Plaintiff further alleges that had Defendant disclosed the true quality and defective nature of the P320, Plaintiff and proposed class members would not have purchased them or would have paid substantially less for them.

Plaintiff seeks certification of a Missouri Class for his alleged violation of the MMPA pursuant to Federal Rule of Civil Procedure 23(b)(3). Plaintiff seeks certification of the following class:

> All persons who purchased a Sig Sauer model P320 pistol without an external thumb safety primarily for personal, family or household purposes in the state of Missouri from September 1, 2017, through the present.[1]

The Court will evaluate whether Plaintiff has satisfied the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3).

## STANDARD

Pursuant to Federal Rule of Civil Procedure 23 "[t]o be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477 (8th Cir. 2016); citing *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). Plaintiff has the burden of establishing that the class should be certified and that the Rule 23 requirements have been met. *Id.*; citing *Luiken v. Domino's Pizza, LLC.*, 705 F.3d 370, 372 (8th Cir. 2013). The court has broad discretion in determining whether class certification is appropriate. *Id.* (internal citations omitted). Pursuant to Rule 23(a) a

---

[1] Excluded from the class are (1) individuals who have filed an individual action against Sig Sauer related to the P320, or (2) individuals who no longer own a P320 pistol without an external thumb safety.

court may "certify a class only if it is satisfied, after a rigorous analysis, that the four threshold requirements are met: numerosity of plaintiffs, commonality of legal or factual questions, typicality of the named plaintiff's claims or defenses, and adequacy of representation by class counsel." *Id.* (internal citations and quotations omitted).

If these threshold requirements are met, Plaintiffs must then establish that the class meets one of the three class actions identified in Rule 23(b). *Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1029 (8th Cir. 2010). Plaintiffs seek certification of a class pursuant to Rule 23(b)(3) which requires the Court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, "and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## DISCUSSION

### I. Standing

Defendant first argues three points challenging Plaintiff's standing. Defendant argues: (1) Plaintiff does not have an injury-in-fact; (2) Plaintiff's purported injury is not fairly traceable to Defendant; and (3) Plaintiff cannot pursue injunctive relief or a class after April 2022. Plaintiff argues that he presents common evidence of a defect that presently exists in every P320 and the Court has previously held that Plaintiff' has Article III standing because he alleges "that every P320 is defective because they lack any external safety features." (Doc. 70).

"Standing is always a 'threshold question' in determining whether a federal court may hear a case." *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016) (quoting *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). A party invoking federal jurisdiction has the burden of establishing standing "for each type of relief sought." *Summers v.*

*Earth Island Inst.*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). *See also Salazar v. Buono*, 559 U.S. 700, 731, 130 S.Ct. 1803, 176 L.Ed.2d 634 (2010).

> [T]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularize; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers*, 555 U.S. at 493, 129 S.Ct. 1142, quoted in *Bernbeck v. Gale*, 829 F.3d 643, 645–47, 2016 WL 3769481, at *2 (8th Cir. July 14, 2016).

### A.    Injury-in-Fact

Defendant argues that Plaintiff concedes that his P320 has never inadvertently discharged, and he has otherwise had no issues with the pistol. Defendant states that Plaintiff cannot experience an inadvertent discharge in the future as Plaintiff has stopped using his P320 firearm. Defendant further argues that Plaintiff does not have an injury in fact because he knew he was purchasing a P320 firearm without a manual safety. Lastly, Defendant argues that Plaintiff does not have an injury-in-fact because he conceded that he bargained for a P320 without a manual safety and paid a discount price. Plaintiff argues that he has presented common evidence of a defect that presently exists in every P320. Additionally, Plaintiff asserts that this Court has previously held that Plaintiff has Article III standing because he alleges "that every P320 is defective because they lack any external safety features." (Doc. 70, pages 3-4).

In the Eighth Circuit, to demonstrate Article III standing and more specifically an injury in fact in this kind of lawsuit, plaintiffs must show a manifest defect in the product they purchased. *Tuter v. Freud Am., Inc.*, No. 4:22-CV-00282-RK, 2022 WL 4636225, at *3 (W.D. Mo. Sept. 30,

2022) (citing *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014)). When the "[p]laintiff has not just pleaded that the [products] are at a risk or merely have a likelihood or propensity to fail[,]" but rather that the product will fail, the Court has found that the "Plaintiff has alleged a sufficient particularized and actual injury-in-fact . . . to demonstrate Article III standing." *Tuter v. Freud Am., Inc.*, No. 4:22-CV-00282-RK, 2022 WL 4636225, at *5 (W.D. Mo. Sept. 30, 2022).

Here, as the Court originally ruled in its November 21, 2023, Order, the Court finds that Plaintiff has sufficiently alleged injury to confer Article III standing regarding the injury-in-fact requirement. Plaintiff alleges that every P320 is defective because they "lack any external safety features." (Doc. 1, page 5). At this stage of the litigation Plaintiff has alleged a manifest defect in the product they purchased. For the reasons stated, Defendant's Motion to Dismiss based on lack of injury-in-fact is **DENIED**.

### B.    Traceability

Defendant argues that Plaintiff has offered no evidence that he was exposed to, let alone relied upon, a statement by Defendant prior to purchase. Defendant asserts Plaintiff admitted he bought his P320 from his friend, never read the owner's manual, and relied on only non-Sig Sauer sources of information. Plaintiff does not make an argument regarding Defendant's traceability argument.

Article III standing requires a plaintiff to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Slaughter v. Bass Pro, Inc.*, 648 F. Supp. 3d 1108, 1118 (W.D. Mo. 2023) (quoting *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022–23 (8th Cir. 2012)). Stated differently, a plaintiff must allege facts demonstrating the asserted injury is "fairly traceable to the challenged

5

action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (quoting *ABF Freight Sys., Inc. v. Int'l Bhd. Of Teamsters*, 645 F.3d 954, 961 (8th Cir. 2011)). The Court's inquiry into a plaintiff's standing under Article III is separate from assessing the merits of an asserted claim. *Red River Freethinkers*, 679 F.3d at 1023.

Here, Plaintiff has sufficiently pleaded a personal injury fairly traceable to Defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. Plaintiff has alleged that "Sig Sauer's design decision to eliminate the trigger toggle means that the P320 lacks any external safety features." (Complaint ¶ 21). Plaintiff further alleges "the absence of these external safety features causes and/or contributes to the P320 being more susceptible than its counterparts to inadvertent discharges, i.e., discharges where there is no trigger pull." (Complaint ¶ 26). Plaintiff has alleged the defect stems from the P320's design lacking external safety features. The design of the P320 was alleged to have been done by Defendant even though Plaintiff purchased his specific firearm from a third party. As Defendant is alleged to have made the design decision that led to the alleged defect, the harm is traceable to Defendant. For the reasons stated, Defendant's Motion to Dismiss based on lack of traceability is **DENIED**.

### C. Injunctive Relief

Defendant argues that Plaintiff cannot seek injunctive relief or represent class members who purchased their P320 after April 18, 2022, because Plaintiff can no longer claim to be misled by Defendant's omission because he now knows of the product defects. Plaintiff argues that Defendant's corporate representative confirmed that the fire control unit design of the P320 remains the same today as it was in 2017.

In the context of injunctive relief, the injury-in-fact requirement element of Article III standing "requires a showing that the plaintiff faces a threat of ongoing or future harm," that is the

plaintiff must "'demonstrat[e] that, if unchecked by the litigation, the defendant's alleged wrongful behavior will likely occur or continue, and that the threatened injury [is] certainly impending.'" *Park v. Forrest Serv. of U.S.*, 20-5 F.3d 1034, 1037 (8th Cir. 2000) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 120 S.Ct. 693, 709, 145 L.Ed.2d 610 (2000)). At the crux of this inquiry is whether the plaintiff can demonstrate "a real and immediate threat that [he] could again suffer similar injury in the future. *Id*.

Defendant focuses its argument on the individual Plaintiff whereas the injunctive relief is requested on behalf of the class. While it is true Plaintiff may no longer claim to be misled by Defendant's omission because of his knowledge of the alleged product defect, the proposed class can show a real and immediate threat that the alleged harm Plaintiff suffered may be suffered again by the members. As Plaintiff seeks to bring this action as a proposed class, and has alleged as such in his Complaint, the Court finds this is sufficient for standing purposes. For the reasons stated, Defendant's Motion to Dismiss based on failure to show a real and immediate threat of a similar injury is **DENIED**. Additionally, for the reasons stated above, Plaintiff has Article III standing. The Court will now proceed to the merits of Plaintiff's Motion for Class Certification.

## II.     Rule 23(a) Requirements

Rule 23(a) requires a party seeking to maintain a class action to affirmatively demonstrate numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). The moving party must do more than plead these requirements; he must be prepared to present evidentiary proof to show these requirements are, in fact, satisfied. *Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776, at *3 (W.D. Mo. June 11, 2015); *see also Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). "[C]ertification is proper only if 'the trial court is

satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

### A. Numerosity

Plaintiff argues that the proposed class is sufficiently numerous. Plaintiff argues that for the limited time period of November 2017 through March 2022, Defendant sold over 19,000 P320s, without a manual safety, into Missouri. Defendant does not raise an argument regarding the numerosity requirements.

"One or more members of a class may sue or be sued as representative parties on behalf of all members only if the class is so numerous that joinder of all members is impracticable". Fed. R. Civ. P. 23(a)(1). In assessing numerosity, courts consider the number of class members as well as "the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Hammer v. JP's Sw. Foods, L.L.C.*, 267 F.R.D. 284, 287 (W.D. Mo. 2010) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982)).

The Court finds the proposed class satisfies the numerosity requirement. Plaintiff has asserted that the proposed class has the potential to be over 19,000 individuals. Given the nature of the action and the inconvenience of trying individual suites the Court finds that the proposed class is so numerous that joinder of all members is impracticable. For the reasons stated, the proposed class satisfies the numerosity requirement as reflected in Federal Rule of Civil Procedure 23(a)(1).

### B. Commonality

Plaintiff argues that the proposed class satisfies the commonality requirement. In support Plaintiff argues the following common question of law or fact are common for all members of the proposed class:

- Whether the P320 contains the alleged Defect;
- Whether Sig Sauer knew or should have known that the P320 contains the alleged Defect;
- Whether the P320's alleged Defect makes it unreasonably dangerous for its reasonably anticipated use;
- Whether Sig Sauer failed to inform consumers of the P320's alleged Defect;
- Whether Sig Sauer failed to inform consumers that the P320 was of a different design than the military version of the pistol;
- Whether Sig Sauer's omissions constituted a deception under Missouri law;
- Whether Sig Sauer's omissions constituted an unfair practice under Missouri law;
- Whether Sig Sauer's omissions constituted a concealment, suppression, or omission of material fact under Missouri law;
- Whether Sig Sauer's unlawful acts would cause a reasonable person to purchase a P320; and
- Whether there is sufficiently definitive and objective evidence to allow each of the class members' loss to be calculated with a reasonable degree of certainty.

Defendant does not raise an argument regarding the commonality requirement.

"One or more members of a class may sue or be sued as representative parties on behalf of all members only if there are questions of law or fact common to the class". Fed. R. Civ. P. 23(a)(2). "What matters to class certification … is not the raising of common 'questions'–even in droves–but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Class members' claims should depend on at least one "common contention" the trust or falsity of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *See id*. A single common question is sufficient to satisfy Federal Rule of Civil Procedure 23(a)(2). *Id*. at 2556.

Here, the Court finds the proposed class satisfies the commonality requirement. Plaintiff has listed the common questions of law or fact that are common for all members of the proposed class. In review of the common questions of law or fact the Court acknowledges these questions are common to the proposed class. For the reason stated, the proposed class satisfies the commonality requirement in Federal Rule of Civil Procedure 23(a)(2).

## C.     Typicality

Plaintiff argues that the typicality requirement is satisfied because Plaintiff asserts the same claims individually that he asserts on behalf of the class, and he suffered the same injury as unnamed class members, *i.e.*, Plaintiff purchased a P320 but was unaware of the pistol's alleged Defect that was allegedly concealed by Defendant. Defendant argues that Plaintiff is subject to a multitude of unique defenses and thus is not typical of the proposed class. Specifically, Defendant argues that Plaintiff is subject to unique defenses, including a lack of standing, a failure to establish nearly every MMPA element, and that Plaintiff cannot show Defendant's knowledge of the 3-Part Defect prior to his purchase. Defendant further argues that Plaintiff has a unique defense in that Plaintiff has no ascertainable loss.

"One or more members of a class may sue or be sued as representative parties on behalf of all members only if the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The class representatives "need not share identical interests with every class member, but only 'common objectives and legal and factual positions.'" *Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776, at *3 (W.D. Mo. June 11, 2015) (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1064 (8th Cir. 2013)). The typicality requirement is "fairly easily met" and it is considered satisfied where "the claims or defenses of the representatives and the members of the class stem

10

from a single event or are based on the same legal or remedial theory." *Lane v. Lombardi*, No. 2:12-CV-4219-NKL, 2012 WL 5462932, at *3 (W.D. Mo. Nov. 8, 2012) (quoting *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561–62 (8th Cir. 1982)).

### i. MMPA Elements

Mo. Rev. Stat. § 407.025 governs civil action to recover damages—class action authorized when dealing with the MMPA. Mo. Rev. Stat. § 407.025.1 outlines the elements of an MMPA claim as:

> Any person who purchases or leases merchandise primarily for personal, family, or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in ether the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.

Mo. Rev. Stat. § 407.025.2 states:

> A person seeking to recover damages shall establish: (a) [t]hat the person acted as a reasonable consumer would in light of all circumstances; (b) [t]hat the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; and (c) [i]ndividual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty.

As the Court had previously stated in its November 21, 2023, Order on Defendant's Motion for Judgment on the Pleadings "the plain language of the MMPA demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice,' 'causation is a necessary element of [a] MMPA claim.'" (Doc. 70, page 6) (quoting *Wullschleger v. Royal Canin USA, Inc.*, No. 19-00235-CV-W-GAF, 2022 WL 1164662, at *3 (W.D. Mo. Mar. 22, 2022), *vacated on other grounds sub non. Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918 (8th Cir. 2023)). Plaintiff has pleaded and reaffirmed that he "would not have purchased the P320, or would have paid substantially less for it, had the defective nature of the P320 … been disclosed to

11

him … prior to the time of the purchase." (Doc. 1, page 2). Plaintiff has shown an ascertainable loss and alleged deceptive merchandising practices, such as advertisements of military-dressed people with the P320 that would cause a reasonable person to enter into the transaction. Thus, Plaintiff has shown a claim for an MMPA action.

### ii. Defendant's Knowledge of the 3-Part Defect

Defendant argues that Plaintiff cannot show Defendant's knowledge of the 3-Part Defect prior to his purchase. Specifically, Defendant argues the Failure Modes, Effects, and Criticality Analysis ("FMECA") did not put Defendant on notice of a defect and only 25 inadvertent discharge incidents occurred before Plaintiff purchased his P320, despite millions of P320's sold. Plaintiff argues that the FMECA, created in February 2017, is common evidence that the company had notice that modifying the trigger pull and/or adding a safety were potential steps to make the P320 safe. Additionally, Plaintiff argues that Defendant should have discovered the Defect upon reasonable inquiry based upon individual personal injury lawsuits alleging the P320 unintentionally discharges and has faced a multitude of law enforcement agencies discounting their use of the P320.

The Court finds that Plaintiff has submitted common evidence that demonstrates that Defendant was aware, or should have been aware, of the 3-Part Defect prior to September 2017. Plaintiff relies on the FMECA to show Defendant had actual knowledge of the 3-Part Defect. The FMECA identified safety measures that would decrease the P320's likelihood of unintentional discharge, which included employing a manual thumb safety and training according to an Army field manual tilted" *Pistol Marksmanship*. (*See* Docs 128-13 and 128-4, page 18). Defendant argues that the FMECA column Plaintiff refers to is to pistols generally, and not specifically the P320. (Doc. 158-8, page 5). Even with that understanding, Defendant was placed on notice of the

inherent risks in pistols generally and created enhancements to satisfy the Government's requirements for the M17 and M18 pistols, the military version of the P320, to mitigate or eliminate the risks found in pistols generally. Plaintiff has provided evidence that Defendant had knowledge of the inherent risks in the average pistol yet made no modifications to the consumer version of the P320 to prevent or mitigate the likelihood of unintentional discharge while ensuring the M17 and M18 versions did. Additionally, Plaintiff has submitted evidence of various lawsuits concerning the safety of the P320 and reports of law enforcement departments abandoning the P320 due to safety concerns. The Court finds that Plaintiff has submitted common evidence that demonstrates that Defendant was aware, or should have been aware, of the 3-Part Defect prior to September 2017.

### iii. Evidence of Beliefs Held by Other Putative Class Members

Defendant argues that Plaintiff asserts he was injured because he was not told about the 3-Part Defect and that he was not buying the military version of the P320. Defendant argues that Plaintiff has not offered any evidence that his beliefs are held by any other putative class members. Plaintiff argues that he owns a P320 with the alleged Defect, and that his claims under the MMPA arise from the same operative facts as other members of the proposed class.

Here, the Court finds that Plaintiff's claims under the MMPA arise from the same operative facts as other members of the proposed class. As stated earlier, the typicality requirement is "fairly easily met" and it is considered satisfied where "the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Lane v. Lombardi*, No. 2:12-CV-4219-NKL, 2012 WL 5462932, at *3 (W.D. Mo. Nov. 8, 2012) (quoting *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561–62 (8th Cir. 1982)). Members of the proposed class are those who purchased a Sig Sauer model P320 pistol without an external

thumb safety because that pistol is subject to the alleged 3-Part Defect that would the average class member would be unlikely to know. This alone would be common amongst the members of the proposed class by virtue of the definition of the class.

Plaintiff has satisfied the typicality requirement. The Court, as discussed above, has already found that Plaintiff has standing to bring this action, that Plaintiff has established the requirements for an MMPA claim, Defendant's knowledge as to the 3-Part Defect and that Plaintiff's claims arise from the same operative facts as other members of the proposed class. The Court is satisfied that Plaintiff meets the typicality requirements in this case. For the reasons stated, the proposed class meets the typicality requirements of in Federal Rule of Civil Procedure 23(a)(3).

## D. Adequacy of Representation

Plaintiff assets he has no interest that is antagonistic to, or conflicts with, the interest of the class. Plaintiff argues that his interests are coextensive of those of the proposed class members in establishing Defendant's liability and damages. Plaintiff states he has actively participated in discovery, including sitting for a deposition, answering interrogatories, and gathering and producing documents. Plaintiff further argues that he has retained qualified attorney who are experienced in consumer protection and class action litigation. Defendant argues that Plaintiff asserts that he was injured because he was not told about the 3-Part Defect and that he was not buying the military version of the P320. Defendant argues that Plaintiff is not adequate because he has not performed his duties properly nor meaningfully participated in the case; Plaintiff's credibility can be called into question; and that the proposed class leaves open to any individuals who suffered personal injury.

"One or more members of a class may sue or be sued as representative parties on behalf of all members only if the representative parties will fairly and adequately protect the interests of the

14

class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is a twofold requirement–"(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Lane v. Lombardi*, No. 2:12-CV-4219-NKL, 2012 WL 5462932, at *3 (W.D. Mo. Nov. 8, 2012) (quoting *U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978)).

### i.       Adequacy of Representation

The Court finds that Plaintiff has met the adequacy of representation requirement. Here, Plaintiff has submitted the declaration of Matthew L. Dameron, a founding partner of Williams Dirks Dameron LLC who is representing Plaintiff in the current action. (Doc. 128-23).   Mr. Dameron has certified his experience includes being co-lead class counsel in *Burnett v. National Association of Relators* where the trial team secured a 1.7-billion-dollar jury verdict in a class action for antitrust claims brought on behalf of Missouri consumers, and whereby an MMPA class was certified on behalf of Missouri consumers. *Id*. at page 6. Mr. Dameron has also declared his record of successfully litigating claims in the Western District of Missouri.[2] *Id*. Additionally both the Willams Dirks Dameron LLC and Lear Werts LLP firm overviews detail their respective experience in complex litigation and class action cases. (See Docs. 128-30 and 128-31). The Court finds that Plaintiff's attorneys are qualified, experienced, and generally able to conduct the proposed litigation.

The Court will now turn to Defendant's arguments that the plaintiff has interests antagonistic to those of the class.

### ii.      Plaintiff's Performance of Duties

---

[2] *See* Smith, et al., v. Atkins Nutritionals Inc., Case No. 2:18-cv-04004-MDH; Hays v. Nissan, Case No. 4:17-cv-00353-BCW; and Woods v. CVS-Caremark, Case No. 4:14-cv-00583-SRB.

Defendant argues that Plaintiff has not performed his duties properly nor meaningfully participated in the case and thus adequacy has not been met. Plaintiff argues that he is actively engaged in the litigation and familiar with the claims in the case. Specifically, Plaintiff argues that he has researched the issue on his own, reviewed the Complaint, stayed updated on the case, and understands the claims, the class action's goals and his duties in satisfying them. In the declaration of Matthew L. Dameron, Mr. Dameron states "Plaintiff Joshua Glasscock has participated actively in discovery, including sitting for a deposition, answering interrogatories, and gathering and producing documents." (Doc. 128-23, ¶ 30). The Court finds that Plaintiff has been an active member of the litigation.

### iii.     Plaintiff's Credibility

Defendant argues that the Plaintiff's credibility can be called into question as critical allegations are untrue. Specifically, Defendant argues that Plaintiff claimed that it concealed its knowledge that the P320 does not have a manual safety from Plaintiff, yet Plaintiff knew that his P320 did not have a manual safety; received the Owner's Manual at purchase, but did not allege that he never read any of its contents; alleged a price premium injury even though Plaintiff testified he would have not paid a lower price; and his changing of the product defect from fired without a trigger pull, to the 3-Part Defect. Plaintiff argues that Defendant's concealment of the alleged defect is entirely consistent with Plaintiff's testimony and the Court should reject Defendant's credibility argument.

Plaintiff's Complaint alleges "Sig Sauer concealed its knowledge of the alleged inadvertent discharge defect from consumers, including Plaintiff and members of the proposed class." (Complaint ¶ 84). The allegations in the Complaint are different from how Defendant has framed its credibility argument, and the Court finds that the credibility issue as to how Plaintiff alleged

the Complaint does not adversely affect Plaintiff's interest compared to those of the class. Likewise, any discrepancies from the Complaint compared to facts unearthed through the discovery process are not so egregious that would cause Plaintiff to have interests to those antagonistic to those of the proposed class. The Court finds that Plaintiff's credibility is not an issue with regards to the adequacy requirement.

### iv.    Proposed Class Open to Individuals Who Suffered Personal Injury

Lastly, Defendant argues the proposed class leaves open to individuals who have suffered personal injury. Specifically, Defendant argues that by leaving the class open to those who suffered personal injury but not pursuing those claims, there is a compelling reason to deny class certification. Plaintiff argues that the proposed class presented in its class certification motion, and described above, specifically excludes all individuals who have filed an individual action against Sig Sauer related to the P320.

The proposed class is defined as

All persons who purchased a Sig Sauer model P320 pistol without an external thumb safety primarily for personal, family or household purposes in the state of Missouri from September 1, 2017, through the present.

The Court notes that Plaintiff has specified through a footnote, which has been copied and denoted as footnote 1 above, specifically excludes from the class (1) individuals who have filed an individual action against Sig Sauer related to the P320, or (2) individuals who no longer own a P320 pistol without an external thumb safety. (Doc. 128, page 31). The Court will certify the class with the understanding of those who are excluded. As such, the Court finds that the proposed class would not be open to individuals who filed an individual action against Defendant related to the P320. The Court finds that Plaintiff's interests are not antagonistic to those of the class. For the reasons stated, the proposed class meets the typicality requirements of in Federal Rule of Civil

17

Procedure 23(a)(4). Plaintiff has satisfied the requirements of Federal Rule of Civil Procedure 23(a).

### III.   Rule 23(b) Requirements

In addition to the requirements under Rule 23(a), a party seeking to certify a class must also satisfy, through evidentiary proof, at least one provision of Rule 23(b). Fed. R. Civ. P. 23(b); *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). Here, Plaintiff seeks to certify the class under Federal Rule of Civil Procedure 23(b)(3). That provision allows certification for a class seeking damages so long as the judgment binds all class members except those who affirmatively opt-out of the class. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614–15 (1997). Certification under Federal Rule of Civil Procedure 23(b)(3) requires a Plaintiff to show: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.   Predominance

Plaintiff argues that claims under the MMPA predominate and are routinely certified. Plaintiff further argues that Defendant's liability is subject to class-wide determination and damages can be determined on a class-wide basis showing that predominance is achieved in this case. Defendant argues that MMPA claims often do not survive Rule 23(b)(3)'s rigorous analysis and that individual issues predominate for: (1) deception; (2) knowledge; (3) materiality; (4) causation; (5) ascertainable loss; and (6) purchase type, preventing certification. Defendant also argues Plaintiff fails to present a viable damages model.

"The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to

member." *Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776, at *4 (W.D. Mo. June 11, 2015) (quoting *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778–80 (8th Cir. 2013)). The predominance analysis under Federal Rule of Civil Procedure 23(b)(3) is considered "rigorous" and "even more demanding than [the analysis under] Rule 23(a)." *Comcast Corp v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011).

### i. Deceptive Omission

Defendant argues that Plaintiff has presented no evidence that there is a common belief of its alleged deception. Defendant states Plaintiff has identified two omissions: (1) the 3-Part Defect; and (2) that "the gun that he purchased was the same one that the military had. Defendant argues that disparate views likely exist within the class of what, if anything, was withheld by Defendant. Plaintiff argues that while the absence of a manual safety may be apparent, the other two components of the 3-Part Defect, and how they combine with the lack of manual safety, are not. Plaintiff argues that there is no evidence that Plaintiff or the class could have known of that fact.

> When determining whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings, but that inquiry should be limited to determining whether, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case of the class. While limited in scope, this analysis should also be rigorous.

*Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 377 (8th Cir. 2013) (quoting *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011)). To establish a prima facie claim under the MMPA a plaintiff must establish:

(a) That the person acted as a reasonable consumer would in light of all circumstances;

(b) That the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; and

19

  (c) Individual damages with sufficiently definitive and objective evidence to allow
    the loss to be calculated with a reasonable degree of certainty.

Mo. Rev. Stat.§ 407.025.1(2).

  Here, the Court finds that a reasonable consumer in light of all circumstances would be aware of the absence of a manual safety but would be unaware of the P320 being fully energized and ready to fire the instant that a round is chambered and that the P320 has a minimal trigger pull because it is short and lightweight. Being unaware of two of the three parts of the alleged defect would cause a reasonable person to enter a transaction that resulted in damages because of the inherent danger alleged due to the Defect. Additionally, there is common evidence as present in Plaintiff's Complaint and the parties briefing that show how a reasonable person could be mislead by the marketing of the P320 being featured with individual in military or tactical gear. While individual questions may be present depending on what the individual class member knew regarding how the P320 operated on a technical level and the scrutiny of the advertisements, the standard is whether a reasonable person would entered into the transaction, not whether an individual did rely and enter into the transaction. The Court finds that if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case of the class.

  **ii.**  **Sig Sauer's Knowledge**

  Defendant argues that Plaintiff has not offered common evidence that Defendant had knowledge of the 3-Part Defect when each putative class member purchased their P320 for over a five-year time span. Defendant further argues that claims about the defect have evolved as prior to mid-April 2022 users claimed P320s were discharging without a trigger pull but the first time Defendant heard about the alleged 3-Part Defect was in Plaintiff's Motion. Plaintiff argues that the FMECA, created in February 2017, is common evidence that the company had notice that

modifying the trigger pull and/or adding a safety were potential steps to make the P320 safe. Additionally, Plaintiff argues that Defendant should have discovered the Defect upon reasonable inquiry based upon individual personal injury lawsuits alleging the P320 unintentionally discharges and has faced a multitude of law enforcement agencies discounting their use of the P320.

Mo. Rev. Stat. § 407.020 defines unlawful practices under the MMPA. It states:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce … in or from the state of Missouri, is declared to be an unlawful practice.

Mo. Rev. Stat. § 407.020.1. Thus, to succeed under the MMPA, "[a] plaintiff must show the defendant failed to disclose material facts that were 'known to him/her, or upon reasonable inquiry would [have been] known to him/her." *Dack v. Volkswagen Grp. of Am.*, 565 F. Supp. 3d 1135, 1145 (W.D. Mo. 2021) (quoting *Elfaridi v. Mercedes-Benz USA, LLC*, No. 16-01896, 2018 WL 4071155, at *5 (E.D. Mo. Aug. 27, 2018)). When dealing with MMPA claims of omission or concealment of a material fact, Missouri courts have consistently ruled that this claim "plainly requires less proof than was required to prove the comparable elements of [a] common law fraud claim." *Tucker v. Gen. Motors LLC*, 58 F.4th 392, 398 (8th Cir. 2023) (quoting *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 774 (Mo. 2007)).

The Court finds that Plaintiff has submitted sufficient evidence that demonstrates Defendant was aware of the 3-Part Defect prior to September 2017. Plaintiff relies on the FMECA to show Defendant had actual knowledge of the 3-Part Defect. The FMECA identified safety measures that would decrease the P320's likelihood of unintentional discharge, which included employing a manual thumb safety and training according to an Army field manual tilted" *Pistol*

*Marksmanship.* (*See* Docs 128-13 and 128-4, page 18). Defendant argues that the FMECA column Plaintiff refers to regards pistols generally, and not specifically the P320. (Doc. 158-8, page 5). Even with that understanding, Defendant was placed on notice of the inherent risks in pistols generally and created enhancements to satisfy the Government's requirements for the M17 and M18 pistols to mitigate or eliminate the risks found in pistols generally. Plaintiff has provided evidence that Defendant had knowledge of the inherent risks in the average pistol yet made no modifications to the consumer version of the P320 to prevent or mitigate the likelihood of unintentional discharge while ensuring the M17 and M18 versions did. Additionally, Plaintiff has submitted evidence of various lawsuits concerning the safety of the P320 and reports of law enforcement departments abandoning the P320 due to safety concerns. The Court finds that if Plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case of the class regarding Defendant's knowledge and an individual inquiry does not predominate over common questions to the class.

### iii.    Materiality

Defendant next argues that Plaintiff presents no evidence that Defendant's alleged omissions were material to the other putative class members. Defendant argues that Plaintiff has not shown he found the 3-Part Defect material because he knew his P320 did not have a safety and he has never inquired, asked, or researched the purportedly material facts that he now asserts were omitted before purchasing any pistol. Plaintiff argues that the danger that the P320 will unintentionally discharge are material to consumers. Plaintiff further argues that Defendant hasn't met its evidentiary burden to show that individual consumers hold the preferences that the company espouses.

The Missouri Code of State regulations define "material fact" as:

> any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her asset, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner.

15 Mo. C.S.R. § 60-9.010(1)(C). *See also Tucker v. Gen. Motors LLC*, 58 F.4th 392, 397 (8th Cir. 2023). "This definition of material is broader than the materiality requirement of common law fraud." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. 2007).

Here, assuming Plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case of the class. Plaintiff alleges that he and the proposed class members would not have purchased them or would have paid substantially less for them had Defendant disclosed the true quality and defective nature of the P320 firearm. (Complaint ¶ 89). Plaintiff adequately shows that Defendant's omissions as to the 3-Part Defect would be considered a material fact which a reasonable consumer would likely consider to be important in making a purchasing decision as to a firearm. The Court finds that if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case of the class regarding materiality and an individual inquiry does not predominate over common questions to the class.

### iv. Causation

Defendant argues Plaintiff has not offered common evidence of causation because he did not purchase directly from Defendant and advertising was not uniform. Defendant argues it did advertise most of the information Plaintiff claims was omitted and news articles publicized the risk of inadvertent discharge. Defendant thus argues that an individuated inquiries are necessary to determine causation. Plaintiff argues that the MMPA simply requires a causal connection between the alleged omission and Plaintiff's injury. Plaintiff argues that Defendant should have disclosed

23

that the military didn't use the consumer version of the P320 and that the P320 is dangerous. Plaintiff asserts had he known about the alleged Defect, he would not have bought the P320.

As the Court had previously stated in its November 21, 2023, Order on Defendant's Motion for Judgment on the Pleadings "'the plain language of the MMPA demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice,' 'causation is a necessary element of [a] MMPA claim.'" (Doc. 70, page 6) (quoting *Wullschleger v. Royal Canin USA, Inc.*, No. 19-00235-CV-W-GAF, 2022 WL 1164662, at *3 (W.D. Mo. Mar. 22, 2022), *vacated on other grounds sub non. Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918 (8th Cir. 2023)).

Here, Plaintiff has alleged a causal connection sufficient to show causation. Plaintiff alleges that he and the proposed class members would not have purchased them or would have paid substantially less for them had Defendant disclosed the true quality and defective nature of the P320 firearm. (Complaint ¶ 89). While Plaintiff did not receive his firearm directly from Defendant, Defendant placed these firearms for sale with different sellers within Missouri and beyond. Defendant manufactured the P320 and was responsible for the design and the alleged resulting Defect. The Court finds that if Plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case of the class regarding causation and an individual inquiry does not predominate over common questions to the class.

### v. Ascertainable Loss

Defendant next argues five reasons why the class members' ascertainable loss presents individuated issues. (1) whether putative class members purchased their P320s despite knowing or not caring about the alleged defect is individualized; (2) whether a defect manifested is not subject to common proof and that the Court would need to investigate whether each user suffered an

inadvertent discharge; (3) Plaintiff has not offered common evidence of a price premium injury; (4) used P320 purchasers may not have been injured at all because any overpayment would not have been reflected in the sale in the secondhand market; and (5) Plaintiff has not put forward any consumer sales records, nor does he offer common proof of the price paid by the class. Plaintiff argues he offered a class-wide damage model from Edward Stockton who has proposed a class-wide benefit of the bargain framework wherein he calculates overpayment by consideration of the cost of the execution of a competent repair. Plaintiff argues cost of repair damages are a valid alternative to diminution in value damages under the MMPA. Additionally, Plaintiff argues that Mr. Stockton will apply his economic model using the findings from Plaintiff's other technical experts to calculate damages for the class which aligns with Plaintiff's theory of liability that a manual thumb safety will remedy the P320's Defect.

Missouri courts have interpreted the ascertained loss element of a statutory MMPA claim as incorporating Missouri's long-standing "benefit of the bargain" common law fraud remedy. *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022); *see also Suset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. App. 1994). "The 'benefit of the bargain' rule awards a prevailing party the difference between the value of the product as represented and the actual value of the product as received." *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014). Cost of repair damages are a valid alternative to diminution in value damages under the MMPA. *Faltermeier v. FCA US LLC*, No. 4:15-CV-00491-DGK, 2016 WL 10879705, at *3 (W.D. Mo. May 26, 2016), *aff'd*, 899 F.3d 617 (8th Cir. 2018); *see also Brown v. Bennett*, 136 S.W.3d 552, 557 (Mo. Ct. App. 2004) (awarding cost of repair damages to give the plaintiff the benefit of her bargain).

Regarding Defendant's first argument, the Court has already stated whether putative class members purchased their P320s despite knowing or not caring about the alleged defect is not subject to the individual, but whether the unlawful act would cause a reasonable person to have entered a transaction that resulted in damages. Next, Defendant argues whether each user suffered an inadvertent discharge. An inadvertent discharge is not necessary should the alleged Defect in the design be present in the P320 firearm. The ascertainable loss as presented by Plaintiff is in the cost of repairing the firearm to mitigate the change of an inadvertent discharge. Defendant's third argument states Plaintiff has not offered common evidence of a price premium injury; however, Plaintiff has submitted a report by Edward Stockton, Plaintiff's damage model expert, who opines that the disclosure of the defect prior to purchase would have made those less desirable expected benefits available at a lower price. (Doc. 128-11, page 15). Fourth, Defendant's argument about secondhand purchasing of the P320 mitigating overpayment from class members is insufficient so long as the alleged Defect was present in the P320 firearm and would necessitate a repair to eliminate the Defect. Lastly, Defendant argues that Plaintiff has not put together any sales records or prices paid by individuals, however the cost of a competent repair would be the basis for damages. (See Doc. 128-11).

Here, Plaintiff has alleged ascertainable loss. Plaintiff has alleged that he and proposed class members would not have purchased or would have paid substantially less for the P320 firearm had the 3-Part Defect been known. (Complaint ¶ 89). Plaintiff has also provided a report from Mr. Stockton that opines that, taking the allegations as true, Plaintiff and class members have suffered economic damages that can be ascertained. (Doc. 128-11). The Court finds that if Plaintiff's general allegations are true, common evidence could suffice to make out a prima facie

26

case of the class regarding ascertainable loss and an individual inquiry does not predominate over common questions to the class.

### vi.    MMPA's Usage Requirement

Defendant argues that the MMPA requires that each putative class member establish that they purchased their P320 primarily for personal family or household purposes. Defendant argues that purchasers will need to individually attest to these criteria, such that individuated issues predominate. Plaintiff did not respond to this argument.

The predominance requirement "tests whether proposed class members are sufficiently cohesive to warrant adjudication by representation." *In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). "At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be stablished with common evidence." *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 554 (W.D. Mo. 2014) (quoting *Avritt v. Reliastoar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)).

Here, the Court finds that the MMPA's usage requirements do not create such individuated issues that predominate the class action. To be admitted as part of the class prospective members will have to attest they have bought their P320 primarily for personal, family, or household purposes. This information will be easy to ascertain either through individual admission of the proposed class member or by virtue of the information of the proposed class member through the consumer purchase of the firearm. As such, the MMPA's usage requirement does not create such individuated issues that predominate the class action.

### vii.    Damages Model

Lastly, Defendant argues that Plaintiff's damage model expert's analysis demonstrates that no price differential existed for a manual safety and Plaintiff's experts will be subject to Rule 702 challenges, which will mandate denial of class certification. Further, Defendant argues that Plaintiff's proposed "repair" methodology does not comport with Plaintiff's theory of liability because: (a) Plaintiff testified it does not repair the 3-Part Defect as the "two other factors … make it dangerous" and (b) it does not eliminate the risk of an inadvertent discharge. Plaintiff makes the same arguments as contained in the ascertainable loss discussion.

Federal Rule of Civil Procedure 23(c)(1)(A) provides that a district court should address class certification at an "early practicable time after a person sues or is sued as a class representative." When deciding whether common issues predominate over individual issues under Rule 23(b)(3), the court should conduct a "rigorous analysis" including an "examination of what the parties would be required to prove at trial." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 611 (8th Cir. 2011) (quoting *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)). Expert disputes "concerning the factual setting of the case" should be resolved at the class certification stage only to the extent "necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class." *Id*. (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005). The Eighth Circuit has never required a district court to decide conclusively at the class certification stage what evidence will ultimately be admissible at trial. *Id*.

Here, Plaintiff has retained Mr. Stockton to assess, "whether Class Members have suffered economic damages and, if so, to determine whether a feasible method exits, or feasible methods exist, to quantify any damages suffered on a Class-wide basis." (Doc. 128-11 page, 5). Mr. Stockton opines that assuming legal and factual allegations of Plaintiff are true, class members

suffered economic harm at the point of acquisition as a result of the Defect. *Id*. page 20. Mr. Stockton proposes that the repair cost model will calculate a reliable and market-based estimate of the amount by which consumers overpaid for the class firearms at the time of acquisition. *Id*. at pages 20-21. The Court finds Mr. Stockton's damage framework is sufficient at this stage of the litigation. For the reasons stated, the Court finds Plaintiff has satisfied the predominate requirement of Federal Rule of Civil Procedure 23(b)(3).

### B.    Superiority

Plaintiff argues that the class action is superior to other available methods for fairly and efficiently adjudicating the controversy because the class action is manageable, and the proposed class is ascertainable. Specifically, Plaintiff argues that this case focuses on the P320's alleged Defect and challenges Defendant's conduct in allegedly concealing that information from all Missouri consumers. Plaintiff further argues that there is an absence of any choice-of-law concerns; the case is limited in scope to Missourians, and it will not implicate the laws of several states.  Plaintiff also argues that it would be judicially inefficient for the claims of Missouri P320 owners to spread among multiple actions, particularly where all class members would rely on the same legal theories and evidence. Defendant argues that Plaintiff has not established superiority as the same concerns about individual issues arise here because there are too many variables to be manageable.

In determining whether a class action is a superior method of adjudication, courts consider the four factors stated in Federal Rule of Civil Procedure 23(b)(3)–"(1) the class members' interest in individual control of case prosecution or defense; (2) the extent and nature of any litigation a class member may have already begun; (3) the desirability, or lack thereof, of concentrating the litigation of the claims in this forum; and (4) the potential difficulties in managing the class action.

*Hopkins v. Kansas Teachers Cmty. Credit Union*, 265 F.R.D. 483, 489 (W. D. Mo. 2010); *see also* Fed. R. Civ. P. (b)(3)(A)-(D)

The Court finds that a class action is the superior method for fairly and efficiently adjudicating the controversy. The Court has already addressed Defendant's concerns about individuality as noted above. Further, the Court finds that any proposed member who has or is in the process of litigating their own claim against Defendant based on the P320 will be excluded from the class. The Court additionally finds that this forum is desirable to adjudicate the matter as all proposed class members would be Missourians and this forum would be the most appropriate to adjudicate the matter. The Court does not anticipate any potential difficulties in managing the class action at this time and the Court is unaware of any class members' interest in individual control of the case's prosecution. For the reasons stated, the Court finds Plaintiff has satisfied the superiority requirement of Federal Rule of Civil Procedure 23(b)(3).

### C. Notice

Plaintiff has contacted a settlement administrator to establish a plan that facilitates notice to class members. The plan indicates that Plaintiff will obtain from Defendant a list of names and email/postal addresses for a portion of the class that will then be used by the settlement administrator to send individual notices. (Doc. 128-28). Plaintiff's plan also includes the settlement administrator setting up an online media campaign, the creation of a case specific website, and a case specific toll-free number to allow potential members of the class to learn more about the litigation. *Id*. Plaintiff argues this plan will reach approximately 85 percent of likely class members. *Id*. Defendant argues that the class is not ascertainable as Plaintiff has not offered a way to identify class members, such as retail sales records. Defendant argues that Plaintiff's class notice

expert proposed social medial notice, but that would necessitate individual testimony to confirm class membership, which would prevent certification.

For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court finds that Plaintiff's proposed plan would meet the requirement set forth in Federal Rule of Civil Procedure 23(c)(2)(B).

## IV.    Rule 23(c)(4) Issue Certification

Alternatively, Plaintiff asks if the Court should determine that Plaintiff's class cannot be certified under Rule 23(b)(3) or prefers to determine liability in the first instance and damages at a later phase, it should certify each of the common issues already enumerated in its briefing. The Court having granted certification of the class will decline to review Plaintiff's Rule 23(c)(4) request.

## CONCLUSION

For the following reasons, Plaintiff's Motion for Class Certification is hereby **GRANTED**. The Court hereby certifies the following class in accordance with Federal Rule of Civil Procedure 23:

> All persons who purchased a Sig Sauer model P320 pistol without an external thumb safety primarily for personal, family or household purposes in the state of Missouri from September 1, 2017, through the present.
>
> Excluded from the class are (1) individuals who have filed an individual action against Sig Sauer related to the P320, or (2) individuals who no longer own a P320 pistol without an external thumb safety.

**IT IS SO ORDERED**.

DATED:   July 28, 2025

31

_/s/ Douglas Harpool_____
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

32